## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

FLORENCE OGBON,

     *Plaintiff*,

     vs.

BENEFICIAL CREDIT SERVICES, INC.;
BANK OF AMERICA, N.A. (TERMINATED);
TRANS UNION, LLC; EXPERIAN
INFORMATION SOLUTIONS, INC.; and
EQUIFAX INFORMATION SERVICES, LLC;

     *Defendants*.

CASE NO. 1:10-cv-03760-PAE
ECF Case

---

## MEMORANDUM OF TRANS UNION, LLC AND EXPERIAN INFORMATION SOLUTIONS, INC. IN SUPPORT OF THEIR JOINT <u>MOTION FOR SUMMARY JUDGMENT</u>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

PRELIMINARY STATEMENT ........................................................... 1

PROCEDURAL HISTORY................................................................. 2

STATEMENT OF FACTS .................................................................. 4

STANDARD OF REVIEW ................................................................. 5

ARGUMENT .................................................................................... 6

I.      PLAINTIFF'S FCRA CLAIMS FAIL AS A MATTER OF LAW....................... 6

    A.    Plaintiff's Section 1681e(b) Claim Fails As A Matter Of Law Because Defendants Employed Reasonable Procedures For Maintaining Maximum Possible Accuracy................................ 6

        1.    Consumer Reporting Agencies May Reasonably Rely On Information Supplied By Creditors Absent Reason To Doubt Creditor Reliability. ............................................ 7

        2.    Plaintiff's Section 1681e(b) Claims Fail Because She Has No Evidence That Defendants' Procedures For Maintaining Accuracy Were Unreasonable........................ 8

    B.    Plaintiff Cannot Show That Defendants Failed To Conduct Reasonable Reinvestigations Of Any Properly Disputed Information. ............................................................... 9

        1.    Without Notice By The Consumer, A Consumer Reporting Agency Has No Duty To Reinvestigate....................... 9

        2.    Plaintiff Never Provided Trans Union Or Experian With Proper Identification Sufficient To Allow Them To Conduct A Reinvestigation. ......................................... 10

    C.    Plaintiff's Remaining FCRA Claims Have No Basis In Law Or Fact.................................................................. 14

        1.    Defendants Did Not Unreasonably Deny Plaintiff Information From Her Credit File............................... 15

        2.    Defendants Followed Reasonable Procedures to Ensure That Consumer Reports Were Sold For Only Permissible Purposes. .................................................. 15

    D.    Plaintiff Is Not Entitled To Damages Or Other Relief She Seeks Under The FCRA. .............................................. 17

        1.    Plaintiff Has No Evidence That She Incurred Actual Damages.................................................... 17

# TABLE OF CONTENTS
(continued)

Page

      (a)    Plaintiff Has No Evidence Of Economic Damages. ........ 17

      (b)    Plaintiff's Evidence Of Emotional Distress Is Not Sufficient. ........................ 18

   2.   Plaintiff Cannot Establish Entitlement To Punitive Damages. ........................ 20

   3.   Consumers May Not Obtain Equitable Relief Under The FCRA. ........................ 21

II.   PLAINTIFF'S STATE-LAW CLAIMS FAIL AS A MATTER OF LAW. ....... 21

   A.   Plaintiff's State-Law Claims Are Preempted By The FCRA. ................ 21

   B.   Even If Not Preempted, Plaintiff's State-Law Claims Fail On Their Merits. ........................ 23

CONCLUSION ........................ 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Adams v. Nat'l Eng'g Serv. Corp.,
620 F. Supp. 2d 319 (D. Conn. 2009)...................................................................22

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986)...........................................................................................6

Anderson v. Trans Union,
405 F. Supp. 2d 977 (W.D. Wis. 2005) ...............................................................14

Benson v. Trans Union, LLC,
387 F. Supp. 2d 834 (N.D. Ill. 2005) ....................................................................7

Breed v. Credit Collection Servs., Inc.,
No. 3:05CV547, 2006 WL 3524093 (W.D. Ky. Dec. 1, 2006) ...............................7

Cadet v. Equifax Credit Svcs.,
No. 05-cv-4843, 2008 WL 189873 (E.D.N.Y. Jan. 18, 2008)...............................23

Cahlin v. General Motors Acceptance Corp.,
936 F.2d 1151 (11th Cir. 1991) ............................................................................7

Casella v. Equifax Credit Info. Servs.,
56 F.3d 469 (2d Cir. 1995)..............................................................10, 18, 19, 20

Celotex Corp. v. Catrett,
477 U.S. 317 (1986).......................................................................................5, 6

Equifax v. FTC,
678 F.2d 1047 (11th Cir. 1982) ............................................................................7

Frost v. Experian,
No. 98 Civ. 2106, 1999 WL 287373 (S.D.N.Y. May 6, 1999)..............................22

Gaft v. Mitsubishi Motor Credit of Am.,
No. 07-CV-527, 2009 WL 3148764 (E.D.N.Y. Sept. 30, 2008) ...........................22

George v. Equifax Mortg. Servs.,
No. 06-cv-971, 2008 WL 4425299 (E.D.N.Y. Sept. 20, 2008) ............................22

Grenier v. Equifax Credit Info. Servs.,
No. 3:94CV00372(PCD), 1995 U.S. Dist. LEXIS 15115 (D. Conn. Oct. 12, 1995) .............16

Henson v. CSC Credit Servs.,
29 F.3d 280 (7th Cir. 1994) .................................................................................7

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

King v. MTA Bridges & Tunnels,
  933 F. Supp. 220 (E.D.N.Y. 1996) .......................................................................18

Levine v. WFNNB,
  554 F.3d 1314 (11th Cir. 2009) ..........................................................................20

Lusk v. TRW, Inc.,
  No. 97-4127, 1999 U.S. App. LEXIS 1848 (6th Cir. Feb. 4, 1999) .......................16

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
  475 U.S. 574 (1986)..............................................................................................5

Murphy v. Midland Credit Mgmt., Inc.,
  456 F. Supp. 2d 1082 (E.D. Mo. 2006)..................................................................7

Murray v. New Cingular Wireless Servs., Inc.,
  523 F.3d 719 (7th Cir. 2008) ..............................................................................20

New York Times Co. v. Sullivan,
  376 U.S. 254 (1964)............................................................................................22

Okocha v. HSBC Bank,
  700 F. Supp. 2d 369 (S.D.N.Y. 2010) (Kaplan, J.)...............................................21

Okocha v. HSBC Bank,
  Case No. 08 Civ. 8650, 2010 U.S. Dist. LEXIS 132152 (S.D.N.Y. Dec. 14, 2010) .........17, 19

Olwell v. Medical Info. Bureau,
  No. Civ. 01-1481, 2003 WL 79035 (D. Minn. Jan. 7, 2003)...................................9

Patrolmen's Benevolent Ass'n of the City of New York v. City of New York,
  310 F.3d 43 (2d Cir. 2002)..............................................................................18, 19

Petty v. Equifax Info. Servs. LLC,
  No. CCB-10-694, 2010 WL 4183542 (D. Md. Oct. 25, 2010)...............................10

Pinner v. Schmidt,
  805 F.2d 1258 (5th Cir. 1986) ..............................................................................7

Pintos v. Pac. Creditors Ass'n.,
  No. C03-5471CW, 2011 U.S. Dist. LEXIS 41630 (N.D. Cal. Apr. 13, 2011)........16

Podell v. Citicorp Diners Club, Inc.,
  112 F.3d 98 (2d Cir. 1997)........................................................................10, 14, 20

Ross v. F.D.I.C.,
  625 F.3d 808 (4th Cir. 2010) ..............................................................................22

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Ruffin-Thompkins v. Experian Info. Solutions, Inc.,
    422 F.3d 603 (7th Cir. 2005) ...................................................18

Safeco Insurance Co. of America v. Burr,
    551 U.S. 47 (2007)...........................................................20, 21

Sarver v. Experian Info. Solutions,
    390 F.3d 969 (7th Cir. 2004) .................................................7, 9

Scott v. Real Estate Fin. Group,
    183 F.3d 97 (2d Cir. 1999)......................................................1

Sepulvado v. CSC Credit Servs., Inc.
    158 F.3d 890 (5th Cir. 1998) ...................................................7

Singletery v. Equifax Info. Servs., LLC,
    No. 2:09-CV-489, 2012 WL 4329273 (N.D. Ala. Sept. 18, 2012).........................15

Spence v. TRW, Inc.,
    92 F.3d 380 (6th Cir. 1996) (per curiam)....................................7

Washington v. CSC Credit Servs. Inc.,
    199 F.3d 263 (5th Cir. 2000) ..................................................21

Whelan v. Trans Union Credit Reporting Agency,
    862 F. Supp. 824 (E.D.N.Y. 1994) ....................................7, 18, 22

## Statutes

15 U.S.C. § 1681b............................................................... *passim*

15 U.S.C. § 1681e(a)...........................................................15, 16

15 U.S.C. § 1681e(b) ........................................................... *passim*

15 U.S.C. § 1681g(a) .........................................................1, 2, 14, 15

15 U.S.C. § 1681h(a) .............................................................10, 15

15 U.S.C. § 1681h(e) ................................................................22

15 U.S.C. § 1681i(a) ......................................................2, 10, 11, 14

Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ........................................ *passim*

New York Fair Credit Reporting Act, GBL § 380 et seq. .................................... *passim*

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

GBL § 380-j(a)..........................................................................................................1, 6

GBL § 380-j(e)..........................................................................................................6, 9

GBL § 380-f..........................................................................................................10, 11

**OTHER AUTHORITIES**

FED. R. CIV. P. 56(a) .......................................................................................................5

Commentary of the Federal Trade Commission to the FCRA, 16 C.F.R. pt. 680, app. .................7

Defendants Trans Union, LLC ("Trans Union") and Experian Information Solutions, Inc. ("Experian") (collectively "Defendants"), respectfully submit the following memorandum of law in support of their Joint Motion For Summary Judgment.

## PRELIMINARY STATEMENT

This action arises under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., and the New York Fair Credit Reporting Act ("NYFCRA"), GBL § 380 et seq. Plaintiff, who was a victim of identity theft, principally claims that Defendants, consumer reporting agencies ("CRAs"), reported certain accounts that were fraudulently opened in Plaintiff's name, and negligently and/or willfully violated §§ 1681e(b) and 1681i(a) of the FCRA (and parallel provisions of the NYFCRA), by failing to employ reasonable credit-reporting procedures and by failing to conduct reasonable reinvestigations in response to Plaintiff's alleged disputes relating to those accounts. Docket Entry ("Doc.") 34 ¶¶ 82, 85, 90, 103, 107, 111. Plaintiff's 144-paragraph Amended Complaint also references §§ 1681b(a) and 1681g of the FCRA, as well as § 380-j(a)(3) of the NYFCRA. Doc. 34 ¶¶ 82, 91, 94, 103, 107, 111.[1] She also purports to assert common law claims of defamation and intentional and negligent infliction of emotional distress. As a result of these alleged violations, Plaintiff claims that she has suffered actual damages, including credit denials and emotional distress. Plaintiff also seeks statutory damages, punitive damages, and costs and attorneys' fees.

Plaintiff's FCRA claims fail as a matter of law. *First*, Plaintiff produced no evidence that the CRAs failed to follow reasonable procedures in preparing Plaintiff's credit reports. To the contrary, the undisputed evidence shows Defendants have extensive procedures for assuring the

---

[1] The NYFCRA is virtually identical to the counterpart sections of the FCRA. Courts repeatedly have recognized the similarity between the two statutes and have interpreted parallel provisions of the NYFCRA in the same manner as the FCRA. See, e.g., Scott v. Real Estate Fin. Group, 183 F.3d 97, 100 (2d Cir. 1999) (holding that parallel provisions of the NYFCRA should be "construed in the same way" as the FCRA).

maximum possible accuracy of reported credit information.  Plaintiff's § 1681e(b) claim fails as a result.  *Second*, the § 1681i claim fails because Plaintiff does not—and cannot—offer any evidence demonstrating that the CRAs failed to reasonably reinvestigate any alleged disputes of information in her credit file, failed to block the reporting of any inaccurate information, or failed to provide Plaintiff with information from her credit file.  Plaintiff never sufficiently disputed any information appearing in her Trans Union or Experian credit files before filing this lawsuit, nor did she ever provide Trans Union or Experian with acceptable proof of her identity, a condition precedent to the CRAs' statutory duties under the FCRA.  *Third*, Plaintiff offers no evidence that the CRAs provided Plaintiff's credit files to any subscriber without a permissible purpose, thus precluding her § 1681b claim, or failed to provide her with a copy of her credit file upon request, thus precluding any claim under § 1681g.  Plaintiff's common-law claims fare no better.  Indeed, each of these claims is preempted by the FCRA, and in any event barred by settled New York law.

Furthermore, all of Plaintiff's claims separately fail in the absence of any proof of causation and harm.  Moreover, Plaintiff's claim for punitive damages is baseless given the complete absence of any evidence of willful conduct by Defendants.  Finally, because the FCRA does not provide consumers a right to seek equitable relief, Plaintiff is not entitled to a declaratory judgment.

## PROCEDURAL HISTORY

This case has an unnecessarily long and convoluted history, due to Plaintiff's repeated failures to comply with the Federal Rules of Civil Procedure and this Court's Orders.  On May 6, 2010, Plaintiff filed her Complaint.  (Doc. 1.)  All of the original defendants (with the exception of Beneficial Credit Services, which Plaintiff failed to serve) moved to dismiss Plaintiff's

Complaint.  (Docs. 10, 17.)  On February 1, 2011, the Court granted those motions, finding that

the Complaint violated Rule 8 because it was devoid of factual allegations regarding wrongful

conduct as to the individual defendants and full of unsupported conclusory allegations.  (Doc. 34

at 3, 5-12.)  The Court granted Plaintiff leave to file a motion to amend, along with a proposed

amended complaint, by February 25, 2011.  (Id. at 13.)

     After four failed attempts, Plaintiff succeeded in filing a Motion to Amend on March 1,

2011.  (Doc. 39.)  Defendant Bank of America opposed Plaintiff's motion (Doc. 43); the CRAs

did not.  On May 5, 2011, in an apparent last-ditch effort to cure the deficiencies identified by

Bank of America, Plaintiff improperly filed a Supplemental Motion to Amend/Correct.  (Doc. 53

and May Status Tr. at 4-5, 9.)  Plaintiff never served the CRAs with a copy of the proposed

Amended Complaint.

     During a status conference held on May 5, 2011, the Court again admonished Plaintiff

that her proposed Amended Complaint "lump[ed] Defendants together which is not a sufficient

way to allege individual liability."  (Id. at 3.)  Nevertheless, the Court granted Plaintiff's motion

as to the CRAs.  (Id. at 9-10.)  On July 8, 2011, the Court issued a Memorandum Decision and

Order denying Plaintiff's Motion to Amend/Correct with respect to Bank of America; denying

Plaintiff's Supplemental Motion to Amend/Correct; terminating Bank of America as a party; and

granting Plaintiff's unopposed Motion to Amend as to the CRAs.  (Doc. 61.)

     On September 13, 2011, the parties appeared for a status conference, at which time the

CRAs moved to dismiss Plaintiff's case for failure to prosecute because she had refused to file an

amended complaint after being granted leave to do so twice – at the May status conference and

again in the July 8, 2011 Order.  (See Sept. Status Tr. at 4-5.)  The Court denied the CRAs'

motions, but ordered Plaintiff to file her Amended Complaint by October 14, 2011, expressly

prohibiting Plaintiff from amending her substantive allegations against the CRAs.  (Id. at 6) ("I'm not going to allow you to again amend the substance of that complaint against any of these defendants."))  On October 11, 2011, Plaintiff properly filed her Amended Complaint.  (Doc 69).

## STATEMENT OF FACTS

The undisputed facts of this case are set forth in detail in Defendants' Local Rule 56.1 Statement of Uncontested Facts, which is incorporated herein by reference.  The following is a brief summary of the pertinent facts.

Plaintiff, a native of Nigeria, is a victim of identity theft.  Defendants' Local Civil Rule 56.1 Statement of Material Facts ("56.1") ¶¶ 1, 5-6.  Plaintiff lived in the United States to attend college at Southern University between 1978 and 1984.  Id. ¶ 2.  While Plaintiff lived in the United States, she was issued a Social Security Number.  Id. ¶ 3.  Plaintiff returned to Nigeria in 1984, after completing college.  Id. ¶ 4.  Plaintiff claims that, after her return to Nigeria, a former acquaintance and neighbor—Veronica Ilenre—stole her identity.  Id. ¶ 5.  Ms. Ilenre subsequently used Plaintiff's identity to file articles of incorporation with the state of Georgia, open personal bank accounts, secure a mortgage, file tax returns, and declare bankruptcy.  Id. ¶ 6.  In short, Ms. Ilenre became "Florence Ogbon" for the purpose of her financial transactions.  Id.  Plaintiff discovered Ms. Ilenre's duplicity when she returned to the United States in 2007.  Id. ¶ 7.  Ms. Ilenre was arrested in May 2011, recently pleaded guilty to several felony counts in Georgia state court, was sentenced to a term of work release and probation, and was ordered to pay Plaintiff restitution in the amount of $50,000.  Id. ¶ 8.

Plaintiff was not aware that she was a victim of identity theft until the Internal Revenue Service notified her that another individual had filed a tax return using her identifying information in 2008.  Id.  Thereafter, on May 28, 2008, Plaintiff filed a police report with the

Oakdale, Minnesota police department claiming identity theft between 1998 and 2008, stating that Plaintiff did not know how someone else obtained her identifying information.  Id. ¶ 9. Meanwhile, on May 23, 2008, Plaintiff contacted Equifax—another CRA—to request that an initial fraud alert be placed upon her credit file.  Id. ¶¶ 12, 30.  Equifax, in turn, notified Trans Union and Experian that it was contacted by Plaintiff and that she requested an initial fraud alert. Id.  On February 14, 2009, Plaintiff filed another identity theft police report with the Gwinnett County, Georgia Sheriff's Department naming Veronica Okotete Ilenre as the suspect.  Id. ¶ 10.

Despite learning that she was a victim of identity theft in early 2008, Plaintiff made little to no effort to inform Trans Union or Experian of any alleged inaccuracies in her credit files before commencing this action in 2010.  Id. ¶¶ 12-50.  Plaintiff never provided Trans Union or Experian with any specific dispute regarding the accuracy of her credit files.  Id.  Nor did Plaintiff provide Trans Union or Experian with proper proof of her identity, despite those CRAs' repeated requests that she do so.  Id.  Plaintiff similarly failed to provide Trans Union with a copy of any of the identity theft reports she filed with various law enforcement agencies.  Id. ¶ 26.

### STANDARD OF REVIEW

Summary judgment is proper where "a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The party moving for summary judgment must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

If the moving party satisfies its burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial."  Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citations omitted).  The existence of a scintilla of evidence in support of the non-moving party, however, is not enough to show a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  "[A] complete failure of proof concerning an essential element of the non moving party's case necessarily renders all other facts immaterial" and warrants summary judgment. Celotex, 477 U.S. at 323.  Finally, the party who bears the burden of proof may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact.  Id. at 324.

## ARGUMENT

I.      **PLAINTIFF'S FCRA CLAIMS FAIL AS A MATTER OF LAW.**

   A.      **Plaintiff's Section 1681e(b) Claim Fails As A Matter Of Law Because Defendants Employed Reasonable Procedures For Maintaining Maximum Possible Accuracy.**

The FCRA requires consumer reporting agencies, when preparing a consumer report, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).[2]  Summary judgment should be granted in favor of Defendants on Plaintiff's § 1681e(b) claim because Plaintiff cannot prove that the procedures used by the Defendants for compiling her consumer reports were unreasonable.

---

[2] The parallel provision of the NYCRA states:  "Consumer reporting agencies shall maintain reasonable procedures designed to assure maximum possible accuracy of the information concerning the individual about whom the report relates."   GBL § 380-j(e).   The NYCRA also prohibits consumer reporting agencies from "report[ing] or maintain[ing] in the file on a consumer, information . . . which it has reason to know is inaccurate."  GBL § 380-j(a)(3).  The undisputed facts of this case demonstrate that the CRAs had no reason to know that the information they reported and maintained regarding Plaintiff was inaccurate.

1.    **Consumer Reporting Agencies May Reasonably Rely On Information Supplied By Creditors Absent Reason To Doubt Creditor Reliability.**

In enacting the FCRA, Congress recognized that "total accuracy in consumer reports is not a realistic objective." Equifax v. FTC, 678 F.2d 1047, 1048-49 (11th Cir. 1982). Thus, it is well established that the FCRA does not impose strict liability for any inaccurate credit report; rather, the FCRA merely imposes a duty of reasonable care in preparation of the report. See, e.g., Sarver v. Experian Info. Solutions, 390 F.3d 969, 971-72 (7th Cir. 2004); Sepulvado v. CSC Credit Servs., Inc. 158 F.3d 890, 896 (5th Cir. 1998); Spence v. TRW, Inc., 92 F.3d 380, 383 (6th Cir. 1996) (per curiam); Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994); Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1156 (11th Cir. 1991); Whelan v. Trans Union Credit Reporting Agency, 862 F. Supp. 824, 829 (E.D.N.Y. 1994). The standard for evaluating the reasonableness of a consumer reporting agency's procedures is "what a reasonably prudent person would do under the circumstances." Pinner v. Schmidt, 805 F.2d 1258, 1263 (5th Cir. 1986); accord Whelan, 862 F. Supp. at 831.

It is equally well established that, when a consumer reporting agency has investigated and reasonably determined that a furnisher of consumer information is reliable, it is entitled to rely on information from that furnisher unless and until it discovers some reason to believe that the furnisher is no longer a reliable source. See Sarver, 390 F.3d at 971-72 (citing Commentary of the Federal Trade Commission to the FCRA, 16 C.F.R. pt. 680, app., section 607 at 3.A); Murphy v. Midland Credit Mgmt., Inc., 456 F. Supp. 2d 1082, 1089 (E.D. Mo. 2006); Benson v. Trans Union, LLC, 387 F. Supp. 2d 834, 841-42 (N.D. Ill. 2005). The agency must receive "notice of systemic problems" with a vetted furnisher's reliability before liability under § 1681e(b) may be imposed. Sarver, 390 F.3d at 972; see also Breed v. Credit Collection Servs., Inc., No. 3:05CV547, 2006 WL 3524093, at *3 (W.D. Ky. Dec. 1, 2006) (liability requires

"notice of prevalent unreliable information from the furnisher which would put the credit reporting agency on notice that systemic problems existed within the furnisher's system"). Here, Plaintiff has no evidence that the CRAs had any reason to doubt the reliability of their information furnishers.

> ### 2. Plaintiff's Section 1681e(b) Claims Fail Because She Has No Evidence That Defendants' Procedures For Maintaining Accuracy Were Unreasonable.

Plaintiff's § 1681e(b) claims fail as a matter of law because she does not—and cannot—offer any evidence that Defendants somehow failed to implement and follow reasonable procedures in their efforts to assure the accuracy of their credit reports.  To the contrary, Defendants offer ample, undisputed evidence that they utilized reasonable procedures with respect to the preparation and maintenance of Plaintiff's credit files.  56.1 ¶¶ 29, 52; Declaration of Angela L. Hamm ("Hamm Decl.") Ex. 2 ¶¶ 1-65, Ex. 3 ¶¶ 6-39.  Defendants investigate each of their furnishers to ensure that they are reliable sources of information before including information the furnishers provide in their consumer information databases.  56.1 ¶¶ 29, 52; Hamm Decl. Ex. 2 ¶ 25, Ex. 3 ¶ 12.  This investigation includes a site visit and thorough data audit, and is supplemented by a contractual obligation on the part of the furnisher to provide accurate information, as well as periodic follow-up audits.  Id.

Plaintiff does not—and cannot—offer any evidence demonstrating that Defendants had reason to doubt the accuracy of information they received regarding Plaintiff.  To the contrary, Ms. Ilenre—the fraudster—had completely assumed Plaintiff's identity and opened numerous accounts in Plaintiff's name.  56.1 ¶ 6.  Defendants thus had no basis for doubting the accuracy of the information that they were reporting with respect to Plaintiff.  Furthermore, the undisputed evidence demonstrates that Plaintiff did not sufficiently dispute any information in her Trans Union or Experian credit files until after she commenced this action.  Id. ¶¶ 12-50.

Plaintiff also has no evidence of any "systematic problems" with Defendants' furnishers, which could have put Defendants on notice of the furnishers' unreliability.  Mere inaccuracy— which is all Plaintiff can show—is not enough to survive summary judgment.  <u>See</u>, <u>e.g.</u>, <u>Olwell v. Medical Info. Bureau</u>, No. Civ. 01-1481, 2003 WL 79035, at *3 (D. Minn. Jan. 7, 2003) ("[T]o survive a motion for summary judgment, a plaintiff must do more than allege that a report contained inaccuracies or that a defendant relied on inaccurate sources when compiling their reports.  The plaintiff must offer specific facts that could allow a reasonable-fact-finder to determine that defendant's procedures were not reasonable.").  "[G]iven the complexity of the [credit-reporting] system and the volume of information involved, a mistake does not render the procedures unreasonable."  <u>Sarver</u>, 390 F.3d at 972.  For this reason, Defendants' Motion for Summary Judgment should be granted with respect to Plaintiff's FCRA § 1681e(b) and NYFCRA § 380-j(e) claims.

## B.   Plaintiff Cannot Show That Defendants Failed To Conduct Reasonable Reinvestigations Of Any Properly Disputed Information.

Plaintiff's reinvestigation claims against Trans Union and Experian fail as a matter of law, because Plaintiff never provided Trans Union or Experian with proper identification and sufficient information to reinvestigate any information in her credit files, despite their repeated, explicit requests that Plaintiff do so.

### 1.   Without Notice By The Consumer, A Consumer Reporting Agency Has No Duty To Reinvestigate.

"[I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly," the consumer reporting agency must conduct "a reasonable reinvestigation to

determine whether the disputed information is inaccurate."  15 U.S.C. § 1681i(a)(1)(A).[3]  Absent

notice by a consumer, however, "a credit reporting agency generally has no duty to

reinvestigate."  Casella v. Equifax Credit Info. Servs., 56 F.3d 469, 474 (2d Cir. 1995); see also

Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 104 (2d Cir. 1997) (reinvestigation duty is

triggered only by a direct request from the consumer).  Consumer contact, by itself, is not

enough to trigger a reinvestigation.  Rather, the consumer must "provide sufficient information

to investigate the disputed information," 15 U.S.C. § 1681i(a)(3)(A), and must "furnish proper

identification" confirming his or her identity, 15 U.S.C. § 1681h(a)(1).  As one district court has

observed:

> The statute requires that a consumer notify a CRA of the existence
> and nature of a dispute for an obvious reason:  Without notice of a
> consumer's dispute, including an explanation of why a consumer
> believes his or her report is inaccurate or incomplete, a CRA
> generally would not know what information to reinvestigate, how
> to reinvestigate it, or whether upon reinvestigation the information
> is indeed inaccurate or incomplete.

Petty v. Equifax Info. Servs. LLC, No. CCB-10-694, 2010 WL 4183542, at *3 (D. Md. Oct. 25,

2010).

>   **2.    Plaintiff Never Provided Trans Union Or Experian With
>           Proper Identification Sufficient To Allow Them To Conduct A
>           Reinvestigation.**

Here, Plaintiff never sufficiently disputed any information appearing in her Trans Union

or Experian credit files before filing this lawsuit, nor did she ever provide Trans Union or

Experian with acceptable proof of her identity, a condition precedent to the CRAs' statutory

---

[3] The parallel provision of the NYFCRA states:  "If a consumer disputes any item of information contained in his
file, and such dispute is directly conveyed to the consumer reporting agency by the consumer, the consumer
reporting agency shall promptly re-investigate and record the current status of such information, unless it has
reasonable grounds to believe that the dispute by the consumer is frivolous . . . ."  GBL § 380-f(a).

duties under the FCRA.  For these reasons, Plaintiff cannot demonstrate that the Defendants violated § 1681i of the FCRA or § 380-f of the NYFCRA.

On May 23, 2008, Trans Union and Experian received a request for an initial fraud alert through CDIA Fraud Exchange.  56.1 ¶¶ 12, 30; Hamm Decl. Ex. 3 ¶ 25 & Ex. A.  Trans Union and Experian responded by adding an initial fraud alert to Plaintiff's credit files, suppressing Plaintiff's credit files from promotion, and notifying Plaintiff by letter that an initial fraud alert had been added to her credit file and enclosing a Fraud Bill of Rights.  56.1 ¶¶ 12-13, 31-32; Hamm Decl. Ex. 3, ¶ 25 & Ex. A.  Trans Union and Experian also explained to Plaintiff how she could request a free copy of her credit files and dispute the accuracy of any information appearing on her credit files.  Id.  Plaintiff did not respond to Trans Union's or Experian's communications, nor did she dispute the accuracy of any information appearing in her credit files.[4]  56.1 ¶ 19-23, 33; Hamm Decl. Ex. 3, ¶ 26.

In early February 2009, Plaintiff contacted Trans Union and Experian directly for the first time, asking that an initial fraud alert be placed on her credit files.  56.1 ¶¶ 16, 35; Hamm Decl. Ex. 3, ¶ 27.  In response, Trans Union added an initial fraud alert, suppressed Plaintiff's credit file from promotion, changed the name on the credit file from "Florence Ogbon" to "Florence Okereiete Ogbon," and deleted the telephone number and first previous address from her credit file.  56.1 ¶ 17.  Trans Union then advised Plaintiff that it would require proof of her identification and address.  Id.  Plaintiff contacted Trans Union again on February 4, 2009, and was again advised that she needed to provide proof of her identification and address.  Id. ¶ 18.

---

[4] Although Plaintiff baldly stated at her deposition that she contacted Experian directly at some point in 2008, she later admitted that she's "not sure of the dates," and that she does not "have a copy" or any other proof of any such communication.  Hamm Decl. Ex. 1 at 83-87.  Plaintiff also admitted that she did not follow-up with Experian, but instead simply "assumed" that Experian had received a dispute from her, and was "work[ing] on that one."  Id. at 304-05.  Experian has no record of receiving any communications whatsoever from Plaintiff at any point in 2008.  56.1 ¶¶ 33-35; Scott Decl. ¶¶ 25-27, 36.

Similarly, Experian added an initial fraud alert to Plaintiff's file and provided Plaintiff with information about how she could ask Experian to block fraudulent information from her credit file.  Id. 36; Hamm Decl. Ex. 3, ¶ 27 & Ex. B.  Experian further advised Plaintiff that she would need to provide Experian with proof of her identification, including proof of her mailing address and Social Security number.  Id.

Plaintiff, however, never provided adequate proof of identity to either Trans Union or Experian, much less provide either CRA with sufficient information regarding the nature of her dispute.  On February 10, 2009, Trans Union received correspondence from Plaintiff that included acceptable proof of her Social Security Number, but the documents did not provide sufficient proof of Plaintiff's address.  56.1 ¶ 19.  Trans Union responded by sending a letter to Plaintiff indicating that an extended fraud alert was added to her credit file, that her proof of address was not acceptable, and again enclosed a Fraud Bill of Rights.  Id. ¶ 20. This letter specifically set forth Trans Union's requirements for proof of address.  Id.  On March 2, 2009, Trans Union received additional documents from Plaintiff, but again the documents did not establish the necessary proof of Plaintiff's address as no two documents contained the identical address inclusive of the apartment number.  Id. ¶ 21.  Plaintiff then contacted Trans Union, by telephone, on March 13, 2009.  Id. ¶ 22.  Once again, Trans Union advised Plaintiff that she needed to provide acceptable proof of her address.  Id.  On March 14, 2009, Trans Union received another notice from CDIA Fraud Exchange.  In response, Trans Union updated the expiration of the fraud alert on Plaintiff's credit file.  Id. ¶ 23.  Trans Union did not receive any additional information from Plaintiff until this lawsuit was filed.  Id. ¶ 25.

Similarly, on March 2, 2009, Experian received a package from Plaintiff enclosing a copy of her New York State Learner Permit and a ConEdison billing summary.  Id. ¶ 37-38; Hamm

Decl. Ex. 3, ¶¶ 27-27 & Ex. C.  Plaintiff did not include her Social Security number or card in this package, did not indicate that she was a victim of identity theft, and did not convey any information regarding the nature of her dispute.  Id.  In response, Experian informed Plaintiff on March 6, 2009 that Plaintiff would need to provide proof of her identity, including her Social Security Number, before Experian could respond to her request.  56.1 ¶ 39; Hamm Decl. Ex. 3, ¶ 29.  Plaintiff did not comply with Experian's request.  56.1 ¶ 40; Hamm Decl. Ex. 3, ¶ 30. Instead, she contacted Experian again on March 14, 2009, asking for a free copy of her credit file.  56.1 ¶ 41; Hamm Decl. Ex. 3, ¶ 31.  Experian again informed Plaintiff that she needed to provide acceptable proof of identification, yet Plaintiff failed to do so.[5]  56.1 ¶¶ 42-44; Hamm Decl. Ex. 3, ¶¶ 31-32, 36 & Ex. D.

Approximately six months later, Plaintiff's attorney contacted Experian in writing. Although lengthy, the letter did not specifically identify any disputed information.  56.1 ¶¶ 45-47; Hamm Decl. Ex. 3, ¶ 33 & Ex. E.  The letter did not include sufficient information to verify Plaintiff's identity, did not contain any proof of Plaintiff's address or Social Security Number, and did not explain with any clarity what information Plaintiff was disputing and why.[6]  Id.  And although the letter referenced two account numbers, neither appeared on Plaintiff's Experian credit file at that time.  Id.  On September 24, 2009, Experian notified Plaintiff's attorney that it was unable to determine the type of assistance he was requesting, and asked Plaintiff's attorney

---

[5]  At one point during her deposition, Plaintiff suggested that her Social Security Number appeared on the Learner Permit that she sent to Experian, or that she copied her Social Security Card and sent it to Experian.  Hamm Decl. Ex. 1 at 88-90.  But Plaintiff herself later admitted that her "Social Security number is not listed on [her] learner's permit," and that she was "scared to put [her] Social Security card in the mail."  Id. at 94, 104.  A copy of Plaintiff's Social Security card was not included in either of the mailings that Plaintiff or her attorney sent to Experian, and Experian has no record of every receiving proof of Plaintiff's Social Security Number before Plaintiff commenced this action.  56.1 ¶¶ 38, 46; Hamm Decl. Ex. 3, ¶¶ 26, 28, 30, 32, 33, 35, 36 & Exs. C, E.

[6]  Although the letter summarily requested that "all negative information on my client's credit report" be removed, the letter was primarily directed to Plaintiff's creditors—not the CRAs—in light of its repeated references to the Fair Debt Collection Practices Act and requirements under that statute.

to provide full proof of Plaintiff's identity so that it could process the dispute.  56.1 ¶ 48; Hamm Decl. Ex. 3, ¶ 34 & Ex. F.  Neither Plaintiff nor Plaintiff's attorney responded to Experian's letter.  56.1 ¶ 49; Hamm Decl. Ex. 3, ¶ 35.  Experian did not receive any additional information from Plaintiff until this lawsuit was filed.  Id.; Hamm Decl. Ex. 3, ¶¶ 35-36.

In such circumstances, Experian and Trans Union had no duty to reinvestigate any information on Plaintiff's credit files, because Plaintiff failed to provide Experian and Trans Union with acceptable proof of her identity, and failed to fulfill her obligation to provide Trans Union and Experian with sufficient information to investigate a dispute.  As noted, the FCRA requires that consumers provide consumer reporting agencies with sufficient information in order to have a disputed item reinvestigated.  A consumer reporting agency, in turn, may terminate a reinvestigation upon a reasonable determination that the dispute by the consumer is frivolous or irrelevant—"including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information."  15 U.S.C. § 1681i(a)(3)(A); see Podell, 112 F.3d at 104 (no duty to reinvestigate until CRA "heard from [the plaintiff] directly"); Anderson v. Trans Union, 405 F. Supp. 2d 977, 983-84 (W.D. Wis. 2005) (granting summary judgment where plaintiff failed to provide proof of his Social Security Number).  Because Plaintiff never provided Trans Union or Experian with proper identifying information or any concrete information regarding the nature of her disputes, Trans Union and Experian could not begin a reinvestigation.

### C.    Plaintiff's Remaining FCRA Claims Have No Basis In Law Or Fact.

Plaintiff's Amended Complaint somewhat inexplicably includes two other claims under the FCRA.  She alleges that Defendants violated § 1681b(a), which specifies the circumstances under which the CRAs may provide consumer reports to third parties, and § 1681g, which requires the CRAs to disclose information in the consumer's credit file to the consumer upon

request.  See Doc. 69 ¶ 82.  None of the facts alleged in Plaintiff's Amended Complaint and, more importantly, none of the evidence supports either of these claims.

### 1.   Defendants Did Not Unreasonably Deny Plaintiff Information From Her Credit File.

Section 1681g of the FCRA requires consumer reporting agencies to "clearly and accurately disclose to the consumer" "[a]ll information in the consumer's file at the time of the request."  15 U.S.C. § 1681g(a).  Although Plaintiff's Amended Complaint includes a claim under § 1681g, it does not contain any factual allegations supporting such a claim, and Defendants know of no such facts.  Indeed, as a matter of law, Trans Union and Experian were *forbidden* from providing Plaintiff with *any* information in her credit file pursuant to FCRA § 1681g, because she had not provided them with proper proof of her identity.  *See* 15 U.S.C. § FCRA §1681h(a) (requiring consumer reporting agencies, "as a condition of making the disclosures required under section [1681g]," "*furnish proper identification*") (emphasis added); Singletery v. Equifax Info. Servs., LLC, No. 2:09-CV-489, 2012 WL 4329273, at *9 (N.D. Ala. Sept. 18, 2012) (discussing the requirements for "proper identification").

### 2.   Defendants Followed Reasonable Procedures to Ensure That Consumer Reports Were Sold For Only Permissible Purposes.

Plaintiff's Amended Complaint likewise fails to allege any facts capable of supporting a "permissible purposes" claim, and Defendants know of no such facts.  Plaintiff has not identified any entity that she alleges received her consumer report without a permissible purpose.  This alone dooms her claim.  Further, even if Plaintiff had stated a claim for a violation of § 1681b, she has no evidence supporting such a claim here.

Consumer reporting agencies are required to "maintain reasonable procedures designed to avoid violations of § 1681b.  15 U.S.C. § 1681e(a).

> These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. Every consumer reporting agency shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report. No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in [§ 1681b].

15 U.S.C. § 1681e(a). Thus, a consumer reporting agency may disclose a credit report, "'to a person which it has reason to believe intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of the consumer.'" Grenier v. Equifax Credit Info. Servs., No. 3:94CV00372(PCD), 1995 U.S. Dist. LEXIS 15115, *2-3 (D. Conn. Oct. 12, 1995) (citing 15 U.S.C. § 1681b(3)(A) (emphasis omitted)).

Here, Trans Union and Experian require their subscribers to certify that it will only request credit information for a permissible purpose identified in the FCRA. 56.1 ¶¶ 29, 52; Hamm Decl. Ex. 3, ¶ 12. During the relevant time period, the Federal Trade Commission ("FTC") provided guidance allowing a credit reporting agency to rely upon blanket certifications by its subscribers to establish the requisite permissible purpose. Pintos v. Pac. Creditors Ass'n., No. C03-5471CW, 2011 U.S. Dist. LEXIS 41630, *9-10 (N.D. Cal. Apr. 13, 2011) (citing 16 C.F.R. § 600, App. 607(2)(C) ("[o]nce the consumer reporting agency obtains a certification from a user (e.g., a creditor) that typically has a permissible purpose for receiving a consumer report, stating that it will use those reports only for specified permissible purposes … , a certification of the purpose need not be furnished for each individual report obtained, provided there is no reason to believe the user may be violating its certification")); see also Lusk v. TRW, Inc., No. 97-4127, 1999 U.S. App. LEXIS 1848, at *3 (6th Cir. Feb. 4, 1999) (no liability

attaches when a subscriber certifies that it will request information only for permissible purposes). Plaintiff has absolutely no evidence that Defendants ever provided her respective consumer reports to any subscriber without a permissible purpose. Her "permissible purpose" claims therefore fail as a matter of law.

> **D.      Plaintiff Is Not Entitled To Damages Or Other Relief She Seeks Under The FCRA.**

Even assuming that Plaintiff could otherwise establish liability here—and she cannot—her claims still fail as a matter of law, because she is not entitled to any of the damages or other relief that she seeks.

> **1.      Plaintiff Has No Evidence That She Incurred Actual Damages.**

Plaintiff has no evidence that the CRAs' allegedly unreasonable conduct caused her any economic, physical, or emotional harm, which precludes recovery for a negligent violation of the FCRA. See, e.g., Okocha v. HSBC Bank, Case No. 08 Civ. 8650, 2010 U.S. Dist. LEXIS 132152, at *17 (S.D.N.Y. Dec. 14, 2010) (citing Burns v. Bank of Am., 655 F. Supp. 2d 240, 250 (S.D.N.Y. 2008)).

> **(a)      Plaintiff Has No Evidence Of Economic Damages.**

As to economic damages, "Plaintiff must provide at least some evidence that [her] denial of consumer credit or similar lost opportunities are attributable to defendants' failure to correct the furnished information after receiving notice of the dispute." Id. at *19. Here, though, Plaintiff did not provide Trans Union or Experian with specific notice of an alleged inaccuracy in her credit file until after she filed this action. See supra Part I.B.2. She likewise did not provide Trans Union or Experian with sufficient proof of her identity, and did not provide Trans Union with an identity theft report in accordance with the requirements of the FCRA until she appended the aforementioned police reports to her Amended Complaint (Doc. 69). Id. Plaintiff's failures

in these respects effectively preclude any liability for damages here, as credit reporting agencies cannot be held liable for alleged inaccuracies of which they had no notice.  See Casella, 56 F.3d at 474; King v. MTA Bridges & Tunnels, 933 F. Supp. 220, 225-26 (E.D.N.Y. 1996) (granting consumer reporting agency summary judgment on reasonable-procedures claim regarding alleged inaccuracies on reports issued prior to the plaintiff providing notice of inaccuracy); Whelan, 862 F. Supp. at 830.  When a consumer reporting agency has no reason to believe that a furnisher is unreliable, the "period of liability" does not begin until the agency receives notice of the plaintiff's dispute.  Ruffin-Thompkins v. Experian Info. Solutions, Inc., 422 F.3d 603, 608 (7th Cir. 2005).  The rationale behind this position, taken by the FTC and the courts, is that "the consumer is in a better position than the credit reporting agency to detect errors."  Id. at 608.

And more, Plaintiff unequivocally *concedes* that she has not suffered any monetary damages as a result of the CRAs' conduct.  56.1 ¶ 54.  At most, she points to a handful of credit denials that were allegedly linked to CRAs' consumer credit reports.  See, e.g., Hamm Decl. Ex. 1, at 120.  But each of Plaintiff's credit denials (and any associated emotional damages) occurred before Plaintiff provided Defendants with notice of the specific inaccurate account information on her credit file, sufficient proof verifying her identity, and details concerning the theft of her identity.  56.1 ¶¶ 26-27, 51, 56.  Thus, because Plaintiff failed to provide the CRAs with notice of the alleged inaccuracies in her respective credit files until after she applied for credit, the CRAs cannot be liable under the FCRA and Plaintiff's claims fail as a matter of law.

**(b)      Plaintiff's Evidence Of Emotional Distress Is Not Sufficient.**

Plaintiff also alleges that she suffered damages related to emotional distress.  Although a consumer is not barred from recovering damages for emotional distress by the FCRA, she must present sufficient, objective evidence of such damages to warrant such a recovery.  Patrolmen's

Benevolent Ass'n of the City of New York v. City of New York, 310 F.3d 43, 56 (2d Cir. 2002). "A plaintiff's subjective testimony, standing alone, is generally insufficient to sustain an award of emotional distress damages." Id.  As the Second Circuit explained, " the plaintiff's testimony of emotional injury must be substantiated by other evidence that such an injury occurred, such as the testimony of witnesses to the plaintiff's distress, or the objective circumstances of the violation itself." Id.; see also Okocha, 2010 U.S. Dist. LEXIS 132152, at *19 ("plaintiff must present concrete evidence of such distress (e.g., medical reports), and his own conclusory allegations are insufficient").

Here, Plaintiff offers no proof that she suffered emotional distress other than her own subjective and conclusory testimony on that point.  Indeed, Plaintiff herself *concedes* that she never sought medical treatment for any of her alleged symptoms of emotional distress, and is thus unable to provide any evidence or documentation of the emotional symptoms that allegedly occurred because of Defendants' actions.  56.1 ¶ 55.  Likewise, because Plaintiff never adequately disputed any credit information with Experian or Trans Union, and never provided them with sufficient proof of her identity, any emotional distress she suffered cannot properly be attributed to Defendants.  See supra Part I.B.2.

Plaintiff's emotional distress allegations are further flawed as Plaintiff cannot establish that her emotional distress was properly attributable to the CRAs, rather than to any other cause, such as the fraudster who assumed her identity or the creditors who repeatedly extended credit to the fraudster.  See Casella, 56 F.3d at 474 ("[Plaintiff] was not entitled to pain and suffering damages in this case, because he had failed to show that his emotional distress was caused by [the credit reporting agency], as opposed to [the creditor].").  The absence of such evidence

renders Plaintiff's claim for emotional distress damages deficient as a matter of law. Accordingly, summary judgment in favor of the CRAs is appropriate.

### 2. Plaintiff Cannot Establish Entitlement To Punitive Damages.

Plaintiff's willfulness claim—and thus her claim for punitive damages—is also meritless. In Safeco Insurance Co. of America v. Burr, 551 U.S. 47 (2007), the Supreme Court held that a willful FCRA violation required a finding that the defendants' challenged practice was based on an "objectively unreasonable" interpretation of the FCRA. "Where, as here, the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator." Id. at 70. The threshold test is objective; subjective considerations are irrelevant, and willfulness cannot be found against "those who followed an interpretation that could reasonably have found support in the courts, whatever their subjective intent may have been." Id. See also, e.g., Levine v. WFNNB, 554 F.3d 1314 (11th Cir. 2009); Murray v. New Cingular Wireless Servs., Inc., 523 F.3d 719 (7th Cir. 2008).

Here, Plaintiff falls far short of demonstrating that the CRAs' conduct was based on an objectively unreasonable interpretation of the FCRA. To the contrary, as shown, Defendants gather information from financial sources that they reasonably believe are reliable and accurately report such information in consumer reports. See supra Part I.A. Plaintiff offers no basis for concluding that these procedures do not comply with the law. Defendants' conduct is likewise consistent with guidance from the U.S. Courts of Appeal, including two decisions in this Circuit. Defendants have no duty to investigate prior to a consumer dispute, Casella, 56 F.3d at 474, and are entitled to report information they receive from their furnishers, Podell, 112 F.3d at 101-02.

And more, as soon as Plaintiff provided sufficient identifying information along with acceptable evidence regarding her allegations of identity theft, the CRAs followed their well-

established procedures and removed the disputed information from Plaintiff's credit file.  56.1 ¶¶ 26-27, 51.  Such conduct proves that the CRAs did not act with willful disregard of Plaintiff's rights under the FCRA.  See Safeco, 551 U.S. at 70.  Thus, because the CRAs' reporting and reinvestigation procedures are not based on an objectively unreasonable interpretation of the FCRA or NY FCRA, the CRAs are entitled to summary judgment on Plaintiff's willfulness and punitive-damages claims.

### 3.   Consumers May Not Obtain Equitable Relief Under The FCRA.

Even if Plaintiff could establish a claim under the FCRA or NYFCRA—which she cannot—her request for declaratory relief is meritless and should be summarily dismissed.  The FCRA simply does not provide consumers a right to such relief.  Washington v. CSC Credit Servs. Inc., 199 F.3d 263, 268 (5th Cir. 2000); see also Okocha v. HSBC Bank, 700 F. Supp. 2d 369, 374 (S.D.N.Y. 2010) (Kaplan, J.) ("Injunctive and declaratory relief . . . are not available under Section 1681.").

And more, Plaintiff's claim for declaratory relief is moot.  After Plaintiff commenced this action, she finally provided the CRAs with sufficient proof of her identity, sufficient information regarding the nature of her disputes, and law enforcement reports detailing the identity theft. 56.1 ¶¶ 26-27, 51.  Thereafter, the CRAs removed the disputed information from Plaintiff's credit files.  Id.  Accordingly, Plaintiff's claim for declaratory judgment fails as a matter of law and is moot.

## II.   PLAINTIFF'S STATE-LAW CLAIMS FAIL AS A MATTER OF LAW.

### A.   Plaintiff's State-Law Claims Are Preempted By The FCRA.

Plaintiff alleges defamation and intentional infliction of emotional distress for publishing false and derogatory information on her consumer credit reports.  Doc. 69 ¶¶ 119-40.  The FCRA

prohibits consumers from "bring[ing] any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency . . . except as to false information furnished with <u>malice or willful intent</u> to injure such consumer."   15 U.S.C. § 1681h(e) (emphasis added).   Congress intended § 1681h(e)'s "general bar on defamation, invasion of privacy, and negligence actions to be the quid pro quo for providing full disclosure under the FCRA."   <u>Ross v. F.D.I.C.</u>, 625 F.3d 808, 814 (4th Cir. 2010).   "The only exception to this bar is a narrow one, requiring proof of 'malice or willful intent to injure the consumer.'"   <u>Id.</u>

The FCRA does not define the term "malice," and courts are split on whether state or federal law governs its meaning for purposes of § 1681h(e).   <u>See id.</u> at 815 (discussing split). District courts in the Second Circuit, including this Court, have applied federal law using the definition of malice provided by the Supreme Court for purposes of libel in <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254 (1964).   <u>See</u>, <u>e.g.</u>, <u>Adams v. Nat'l Eng'g Serv. Corp.</u>, 620 F. Supp. 2d 319, 335 (D. Conn. 2009); <u>Gaft v. Mitsubishi Motor Credit of Am.</u>, No. 07-CV-527, 2009 WL 3148764, at *12 (E.D.N.Y. Sept. 30, 2008); <u>George v. Equifax Mortg. Servs.</u>, No. 06-cv-971, 2008 WL 4425299, at *9 (E.D.N.Y. Sept. 20, 2008); <u>Frost v. Experian</u>, No. 98 Civ. 2106, 1999 WL 287373, at *6 (S.D.N.Y. May 6, 1999); <u>Whelan</u>, 862 F. Supp. at 833.   Malice, in this context, "require[s] a showing that the agency knowingly and intentionally committed an act in conscious disregard for the rights of others."   <u>George</u>, 2008 WL 4425299, at *9; <u>accord</u> <u>Whelan</u>, 862 F. Supp. at 833.

The evidence here, however, does not support a finding that the CRAs acted maliciously. Ms. Ilenre assumed Plaintiff's identity for the purpose of all of her business and financial transactions.   56.1 ¶ 6.   Then, in accordance with the FCRA, Trans Union and Experian

repeatedly advised Plaintiff that she would need to prove her identity in order to dispute the information on her respective credit files.  56.1 ¶¶ 12-54.  See supra Part I.B.2.  Plaintiff never disputed any credit information with either Trans Union or Experian, never provided Trans Union or Experian with sufficient proof of her identity, and never provided Trans Union with a copy of an identity theft report.  Id.  It follows *a fortiori* that the CRAs did not act with malice or willful intent to injure Plaintiff.  Indeed, *Plaintiff herself* testified that she had no reason to believe that Defendants maliciously or willfully tried to cause her harm.  56.1 ¶ 53.  Plaintiff's state law claims are therefore preempted, and the CRAs are entitled to summary judgment with respect to these claims.  See, e.g., Cadet v. Equifax Credit Svcs., No. 05-cv-4843, 2008 WL 189873, at *5 (E.D.N.Y. Jan. 18, 2008) (granting summary judgment, where plaintiff testified that there was no "reason to believe that" defendant "had maliciously or willfully tried to cause him harm").

### B.      Even If Not Preempted, Plaintiff's State-Law Claims Fail On Their Merits.

Regardless, even if Plaintiff's state-law claims are not preempted by the FCRA, they nevertheless fail as a matter of law.

As this Court previously observed, "[a] claim for intentional infliction of emotional distress requires a plaintiff to plead: (1) extreme and outrageous conduct; (2) the intentional or reckless nature of such conduct; (3) a causal relationship between the conduct and the resulting injury; and (4) severe emotional distress."  Doc. 34 at 10 (collecting cases, and concluding that Plaintiff failed to state a claim for intentional or negligent infliction of emotional distress as a matter of law).  Further, "[w]here the infliction of emotional distress is alleged to be negligent, … it may be established by either the 'bystander theory' or the 'direct duty theory.'"  Id. (citing Mortise v. United States, 102 F.3d 693, 696 (2d Cir. 1996)).  Here, for all of the reasons stated above, Plaintiff does not—and cannot—offer any evidence that (1) Defendants' conduct was

extreme and outrageous and performed intentionally or recklessly; (2) there is a causal relationship between Defendants' conduct and Plaintiff's alleged injuries; or (3) Plaintiff suffered any emotional distress. See supra Part I. Nor does Plaintiff offer any evidence that her alleged injuries "negligently stem from either a physical injury or threat of physical injury by a Defendant, or a breach of a special duty between Plaintiff and any particular Defendant." Doc. 34 at 10. To the contrary, the evidence here affirmatively demonstrates that Defendants' conduct was reasonable at all times, and that Plaintiff's alleged injuries, if any, stemmed directly from the fraudster's conduct, and Plaintiff's failure to adequately dispute the information appearing on her credit files. See supra Part I.

Plaintiff's defamation claim is similarly flawed. As this Court previously held in dismissing the defamation claim in Plaintiff's original Complaint, "[t]he elements [of defamation] are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and, it must either cause special harm or constitute defamation per se." Doc. 34 at 9. As demonstrated above, however, Defendants' procedures and conduct in this action were by all accounts reasonable, and did not cause Plaintiff to suffer any harm at all. See supra Part I, II.D. And more, Plaintiff cannot demonstrate that Defendants published Plaintiff's credit files without privilege or authorization, because Plaintiff never provided Defendants with adequate notice that the information contained therein was incorrect. See supra Part I.B.2. And in any event, "[t]o the extent [Defendants' alleged] statements were published prior to May 6, 2009, the defamation claims are untimely in light of the one year statute of limitation." Id. at 9 n.6 (citing N.Y. C.P.L.R. § 215(3)).

For all of these reasons, Plaintiff's state-law claims fail as a matter of law.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully requests that this Court grant summary judgment in their favor, dismiss Plaintiff's claims against Defendants in their entirety, and award Defendants all other just and proper relief the Court deems appropriate.

Date:  February 1, 2013                                          Respectfully submitted,


                                                        *s/ Angela L. Hamm*
                                                        Robert J. Schuckit, Esq.
                                                          (Admitted *Pro Hac Vice*)
                                                        William R. Brown, Esq.
                                                          (Admitted *Pro Hac Vice*)
                                                        Angela L. Hamm, Esq.
                                                          (Admitted *Pro Hac Vice*)
                                                        Schuckit & Associates, P.C.
                                                        4545 Northwestern Drive
                                                        Zionsville, IN  46077
                                                        Telephone:  (317) 363-2400
                                                        Fax:  (317) 363-2257
                                                        E-Mail: rschuckit@schuckitlaw.com
                                                                wbrown@schuckitlaw.com
                                                                ahamm@schuckitlaw.com

                                                        *Counsel for Defendant Trans Union, LLC*

                                                        Timothy P. Creech, Esq.
                                                        Kogan, Trichon & Wertheimer, P.C.
                                                        1818 Market Street, 30th Floor
                                                        Philadelphia, PA  19103
                                                        Telephone:  (215) 575-7618
                                                        Fax:  (215) 575-7688
                                                        E-Mail:  tcreech@ktwlaw.com

                                                        *Local Counsel for Defendant Trans Union, LLC*

Nicholas W. Haddad, Esq.
Jones Day
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Fax:  (212) 755-7306
E-mail:  nwhaddad@jonesday.com

*Counsel for Defendant Experian*
*Information Solutions, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been filed electronically on the **1st day of February, 2013**.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's electronic filing.

| | |
|---|---|
| Osita Emmanuel Okocha, Esq.<br>lawossy@aol.com | Nicholas Haddad, Esq.<br>nwhaddad@jonesday.com |
| Richard T. Marooney, Jr., Esq.<br>rmarooney@kslaw.com | Stephanie Cope, Esq.<br>scope@kslaw.com |
| Jessica Rank Divine, Esq.<br>jdivine@kslaw.com | George Edward Spencer, Esq.<br>gspencer@curtis.com |
| Marc H. Goldberg, Esq.<br>mgoldberg@phillipslytle.com | Rajeev Muttreja, Esq.<br>rmuttreja@jonesday.com |
| Christina Conroy, Esq.<br>cconroy@kslaw.com | |

The undersigned further certifies that a true copy of the foregoing was served on the following parties via First Class, U.S. Mail, postage prepaid, on the **1st day of February, 2012**, properly addressed as follows:

| | |
|---|---|
| None. | |

*s/ Angela L. Hamm*

Robert J. Schuckit, Esq.
  (Admitted *Pro Hac Vice*)
William R. Brown, Esq.
  (Admitted *Pro Hac Vice*)
Angela L. Hamm, Esq.
  (Admitted *Pro Hac Vice*)
Schuckit & Associates, P.C.
4545 Northwestern Drive
Zionsville, IN  46077
Telephone:  (317) 363-2400
Fax:  (317) 363-2257
E-Mail: rschuckit@schuckitlaw.com
        wbrown@schuckitlaw.com
        ahamm@schuckitlaw.com
*Counsel for Defendant Trans Union, LLC*
