UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT
OF NEW YORK
_____

**FLORENCE OGBON**

        Plaintiff,

       -against-

**BENEFICIAL CREDIT SERVICES, INC.,
BANK OF AMERICA, N.A.,
TRANS UNION, LLC .,
EXPERIAN INFORMATION SOLUTIONS, INC., and
EQUIFAX INFORMATION SERVICES, LLC.**

        Defendant(s)
_____

Civil Action No.: 10-cv-3760 (PAE) (GWG)

LOCAL CIVIL RULE 56.1 STATEMENT OF MATERIAL FACTS IN CONNECTION WITH PLAINTIFF'S OPPOSITION TO TRANS UNION AND EXPERIAN'S MOTION FOR SUMMARY JUDGMENTN

MAY IT PLEASE THIS HONORABLE COURT:

    Plaintiff, Florence Ogbon, respectfully opposes the Motion For Summary Judgment filed by Trans Union and Experian and files herewith a Statement of Material Facts, as follows:

1. Some third person unknown to plaintiff obtained her social security number and made fraudulent applications for credit with various lenders who did little more than a perfunctory credit report review before extending credit to the imposter in plaintiff's personal and credit identity.

2. Application fraud is rampant and is a well known problem plaguing consumers. It is well known to the credit and credit reporting industries. The credit was issued upon the strength of plaintiff's credit report and rating, at that time. As the imposter secured the benefits at an alternate address and rang up charges and, obviously, failed to pay, lenders, like HSBC Bank, Chase Bank, Beneficial Credit Services, various Collection Agencies and others reported derogatory data to the national credit reporting agencies, like Trans Union and Experian Information Solutions ("Experian"), and

that data was reported in consumer credit reports about plaintiff.

3. Despite plaintiff's protestations/disputes and the obvious fraudulent nature of the accounts and reportings, Trans Union and Experian and some of the duped creditors, including HSBC Bank and others forged forward dunning plaintiff and ruining her credit report and rating, a property right which she had earned and built up over many years of paying her bills, etc. On or about and beginning from 2008, plaintiff disputed errors in her credit report and advised Experian/Trans Union that multiple accounts had been opened through application fraud. Thereafter plaintiff disputed the same items on other occasions to Trans Union, Experian and HSBC Bank and Beneficial Credit Services, Inc.

4. The conclusion of the first Trans Union and Experian reinvestigation by the Defendants took place after more than 30 days by its own words, after receiving the dispute. Plaintiff's disputes were proper and clearly explained that Experian/Trans Union needed to review each incoming item and convey disputes on accounts to its subscribers. The Defendants were able to understand the disputes as plaintiff attached copies of documents and credit reports marking the fraud items and her dispute cover letter also explained that application fraud was occurring.

5. Trans Union and Experian had the ability to instantly review the personal identification data being reported and attached to each incoming account reporting which Defendants matched to plaintiff's personal identifiers and determine whether the account arose from plaintiff's true address or from some other address. Trans Union and Experian maintains Admin reports and other internal reports and records which easily permit quick review of identification data reported by each subscriber with respect to the specific subject account. This review instantly discloses fraud accounts from non-fraud accounts. If used, Trans Union and Experian could have instantly resolved

Florence Ogbon fraud disputes, however Trans Union and Experian chose not to do so.

6. In this first reinvestigation and the others which should have occurred upon each dispute by plaintiff (certainly by numerous telephone disputes beginning about 2008) Trans Union and Experian should have properly reinvestigated the disputes and deleted and suppressed the fraud account reportings which were plaguing plaintiff. Credit reporting is a volitional, purposeful act and the failure to reinvestigate and continue false reportings is a willful violation of the FCRA, 1681i. Subsequent reports are therefore issued in willful violation of 1681e(b). Experian/TRW's failure cannot be deemed accidental.

7. Defendants also had the ability to contact Plaintiff, Florence Ogbon and her Counsel, Osita Okocha, Esq., at the phone numbers provided so as to verify the letter and disputes and to learn more about the matter. The Dispute Resolution (D/R Log) Log supplied by Experian, as its version of the contacts found in their business records, shows that Plaintiff disputed information on her credit reports, however Defendants suggested that they repeatedly could not understand the dispute and that she "needed better disputes."

8. The 2008 dispute and the subsequent post-reinvestigation report showed a listing of all of the fraud accounts. Defendants employees claimed that they sent a consumer dispute verification form in response to Plaintiff's various disputes. Plaintiff also asked for a fraud alert to be placed. This "alert" is nothing more than a perfunctory "consumer statement" placed in a text box at the bottom of then subscriber version reports, which is rarely read by subscribers and never considered by subscribers in automated application processing or where scoring is used. This problem has been extensively discussed at the White House and FTC hearings on this matter. Over the years including after filing for her lawsuit, plaintiff was not only asking for a statement or alert, as it was already there. She was

again complaining about the confounding derogatory errors. Again Plaintiff requested for this account to be blocked to which the Defendants failed to do in violation of the statute.

9. Defendants tried to suggest that the inaccurate information was removed, as this is this is shown to be untrue because the credit report available to the public keep showing derogatory information about Plaintiff notwithstanding Defendants papers or claim that it was removed. Experian sent plaintiff a post-reinvestigation credit report on or about September 18, 1996. That report contained multiple fraud accounts, still not deleted and suppressed by Experian. Those items are derogatory, harmful references. The reinvestigation failed despite multiple disputes, as admitted by Defendants claim that Plaintiff did not provide proof of address and her identity.

9. Despite clear knowledge of plaintiff's disputes and Defendants, Trans Union and Experian decision to delete certain fraud-related, disputed items much more later and not others (though they bore the same fraud-related personal identification data) and despite clear information in their own internal records, Experian continued to prepare and issue consumer credit reports about plaintiff to other third persons which bore some of the previously disputed, fraud-related and derogatory account reportings. In her deposition, Florence Ogbon testified that on numerous occasions she contacted the defendants, Trans Union and Experian and disputed the continued errors plaguing her credit reports.

10. While Plaintiff, Florence Ogbon did not log each call and follow up in writing on many occasions, it is clear that she contacted Experian repeatedly and complained. Sometimes it appears that they would block her calls. Defendants' own records note contact with Plaintiff, where they accessed her report. Even after those complaints, Defendants kept on reporting inaccurate personal identification data, employment data, and, most damaging, the fraud accounts: of Bankruptcy. Plaintiff does not have reason to know why Defendants kept assuring her that they were handling her

concerns while intentionally leaving the false data in her records. To a layperson, one might think they are simply bumbling, poor record keepers.

11. The evidence shows Trans Union and Experian's strategy to permit the fraud account data to remain on the consumer credit reports indefinitely, all with the goal of giving their subscribers leverage to try to collect the balances, albeit from the wrong consumer.

12

13. These denials was caused by an erroneous Trans Union and Experian credit report containing previously disputed, fraud-related and derogatory account reportings. Trans Union and Experian had plaintiff's disputes in their records, including specific knowledge that her identity had been stolen and her social security number used to create fraud accounts. Still, Trans Union and Experian did nothing to assure the maximum possible accuracy of its report to inaccurate information, which occurred within two years of suit filing as follows: Macys Store Credit card – Denied Feb 10, 2011, JCPenny Store Credit card – Denied Feb 11, 2011, Sears Store Credit card – Denied Feb 11, 2011, BestBuy Store Credit card – Denied Feb 14, 2011, Target Store Credit card – Denied Feb 11, 2011, AirTran Airways Credit card – Denied Oct 17, 2008

.14. The Defendants still reports tradelines concerning the identity thief information, Veronica Oje Ilenre. Plaintiff's credit denials were caused by an erroneous Trans Union and Experian credit report containing previously disputed, fraud-related and derogatory account reportings. The Defendants had plaintiff's disputes in their records, including specific knowledge that her identity had been stolen and her social security number used to create fraud accounts. Still, the Defendants did nothing to assure the maximum possible accuracy of its report about Plaintiff, which occurred within two years of suit filing.

15. These denials were caused by an erroneous Trans Union and/or Experian credit report containing previously disputed, fraud-related and derogatory account reportings. Defendants had plaintiff's disputes in their records, including specific knowledge that her identity had been stolen and her social security number used to create fraud accounts. Still, Trans Union and Experian did nothing to assure the maximum possible accuracy of its report, which occurred within two years of suit filing.

16. Defendant's Trans Union report till now still listed as a charged off/maximum derogatory account. That report still listed false, fraud-related names, addresses and employment data as well. The denials were caused by an erroneous Trans Union credit report containing previously disputed, fraud-related and derogatory account reportings. Trans Union had plaintiff's disputes in their records, including specific knowledge that her identity had been stolen and her social security number used to create fraud accounts. Still, Trans Union did nothing to assure the maximum possible accuracy of its report, which occurred within two years of suit filing.

17. The credit denial/delayed approval of credit was caused by an erroneous Trans Union/Experian credit report containing previously disputed, fraud-related and derogatory account reportings. Defendants had plaintiff's disputes in their records, including specific knowledge that her identity had been stolen and her social security number used to create fraud accounts. Still, Experian did nothing to assure the maximum possible accuracy of its report about the inaccurate information about plaintiff, which occurred within two years of suit filing.

18. Defendants' subscriber version report provided is very telling. This report is obviously much broader and contains more data than being disclosed to the consumer, though the quid pro quo of the FCRA mandates disclosure of all information to the consumer so as to permit a consumer to

intelligently understand and consider the data being warehoused by the credit reporting agencies. This report, dated 2011, after many disputes by Florence Ogbon to Trans Union/Experian, still contained the inaccurate personal identification data (names and addresses, multiple and erroneous), employment data, and, most damaging, the fraud accounts: Bankruptcy.

19. Absent the fraud accounts, Florence Ogbon's credit is stellar and impeccable at all times. This report also shows the risk factors/denial codes issued by Trans Union/Experian to lenders/subscriber including factor number "22" which means that the report contained bad credit references of the worst kind. Even after suit was filed, Experian continued to generate reports bearing the fraud-related, derogatory data. The inquiry logs show the third parties receiving copies of the error-ridden reports in the interim.

20. Trans Union and Experian make no effort to explain why it repeatedly issued error-ridden reports on all of these occasions after it had adequate opportunity to reinvestigate the errors. Defendants likewise does not deny that its own records contained plaintiff's disputes and protestations regarding the fraud accounts. Trans Union and Experian have simply tried to disclaim their actions. Even under their own version of the facts, Trans Union and Experian was in control of the operation when it completed a faulty, perfunctory reinvestigation and issued a port-reinvestigation report to plaintiff which had removed some of the fraud accounts and, yet, not others thereby leaving plaintiff's report substantially damaged and inaccurate.

21. Credit reporting is the cheapest and most effective collection tool available to creditors and collectors ("subscribers," "users" and "furnishers," as defined in FCRA). Defendants issued multiple consumer credit reports about Plaintiff, well after 2010, which contained previously disputed, inaccurate and damaging fraud account data. Trans Union and Experian does not contest, nor do they

even address, the multiple credit denials suffered by Florence Ogbon well after her initial dispute in which Trans Union and Experian deleted and suppressed some of the fraud accounts and fraud inquiries yet, inexplicably, left others intact on plaintiff's credit reports. Defendants maintained information in its files clearly showing plaintiff's disputes and the fact that the remaining fraud accounts were disputed yet Trans Union and Experian repeatedly issued reports bearing those items.

22. Defendants contracted with smaller, localized credit reporting agencies. In exchange for a small slice of the profit pie on credit reports sold bearing certain zip codes contracted to local bureau, Trans Union/Experian attempt to contract away their FCRA duties (all of them) to the smaller, local bureau with regard to consumers in those zip codes. Regardless, Trans Union/Experian keeps the overwhelming majority of the profit and pretends to contract away liability.

23. Experian set forth policy of making the subscriber's version the final word and mandating the subscriber's approval and consent prior to deleting information. Defendants also had/has system capabilities to easily identify fraud accounts and to recognize patent errors caused by fraud. System directories permit immediate contact by email and phone to subscribers which would permit instant decisions of disputes, yet Defendants frowned upon this expedient process and tried to protract the reinvestigation process in the hopes that the consumer would become dismayed and abandon the process thereby resulting in the data remaining.

24. Defendants Admin report shows how easily Trans Union and Experian should have identified and removed the fraud-related items. Trans Union and Experian received the first dispute from plaintiff around 2008 and failed to correct the obvious errors and performed perfunctory checks and simply mimicked their subscribers. After that, plaintiff lodged further disputes. Defendants either failed to perform any reinvestigations and there are at least three separate violations of 1681i(a).

Defendants glossed over and failed to explain the numerous credit reports it issued after clear notice of the errors which existed in their files from the first dispute, let alone the 2009 disputes, for which they clearly cannot disclaim their existence. These constitute numerous violations of 1681e(b), in that Experian failed to employ reasonable procedures to exclude the previously disputed, fraudulent data from plaintiff's consumer credit reports issued to many different lenders, each causing a denial and one denied mortgage subsequently approved after a delay. Macys Store Credit Card – Written denial. The factors which most significantly affected their decision are AMOUNT OF AVAILABLE CREDIT ON OPEN REVOLVING ACCOUNTS, TOO MANV DELINQUENT ACCOUNTS, NUMBER OF DELINQUENT ACCOUNTS IN THE PAST 12 MONTHS, TOO MANY ACCOUNTS SERIOUSLY DELINQUENT, TOO MANY PUBLIC RECORDS. The credit decision was based in whole or in part on information obtained in a report from EXPERIAN CONSUMER ASSISTANCE: Sears Store Credit card – Written denial. The reason given for denial was bankruptcy. The credit decision was based in whole or in part on obtained from Experian Inc., a consumer reporting agency; JCPenny Store Credit card – Written denial. The reason given for denial were Too few account currently paid as agreed, Number of months since 30 days past due on a credit account is too low, Accounts in collection or 60 days past due or adverse public records. Some information used in making this decision was obtained from T.U. Consumer relations, BestBuy Store Credit Card – Written denial. The credit decision was based in whole or in part on information provided by Equifax Credit Info Services, Target Store Credit Card – Written denial. The credit card application was not approved because while reviewing the application, they found that "I" previously had a credit account with Target National Bank with unsatisfactory performance, AirTran Airways Credit Card – Written denial. The reasons given for denial were Serious delinquency, and public

record or collection filed, Time since delinquency is too recent or unknown, Length of time since derogatory public record or collection is too short. In evaluating the application, Trans Union provided information that in whole or in part influence their decision. Plaintiff mentions the following as inaccurate - **US BKPT CT GA ATLANTA, AFNI, CHASE, CHASE, CITIFINANCIAL, CREDIT ONE BANK, FASHION BUG/SPIRIT OF AMERICA, FIRST PREMIER BANK, HSBC BANK, UNIQUE NATIONAL COLLECTION,** 3901 STONECROFT BLVD CHANTILLY VA 20151, FLORENCE V OGBON, 2140 ATKINSON LN LAWRENCEVILLE, GA 30043, VERONICA OGBON, 4695 SUGARLOAF PKWY LAWRENCEVILLE, GA 30044, VERONICA ILENE OGBON, VERONICA O ILLENRE, etc.

25. Experian has been willful in this case and their motion should be denied.

Respectfully submitted,

 /s/ Osita Okocha

By: _____
OSITA OKOCHA
1425 Pearl Street
Far rockaway, NY 11691
Phone: (212) 709-8143
Fax: (212) 943-2300
E-mail: LAWOSSY@aol.com