UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                                    :
FLORENCE OGBON,                                     :        10 Civ. 3760 (PAE)
                                                    :
                              Plaintiff,            :        OPINION & ORDER
                      -v-                           :
                                                    :
BENEFICIAL CREDIT SERVICES, INC. et al.             :
                                                    :
                              Defendants.           :
                                                    :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

        Plaintiff Florence Ogbon brings this action against defendants Trans Union, LLC ("Trans

Union") and Experian Information Solutions, Inc. ("Experian") alleging violations of the Fair

Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, and the New York Fair Credit

Reporting Act ("NYFCRA"), N.Y. Gen. Bus. Law §§ 380 *et seq.*  Ogbon also asserts common

law claims of defamation and intentional and negligent infliction of emotional distress.

Defendants move for summary judgment.  For the reasons that follow, that motion is granted.

I.      **Background**

        **A.  Local Rule 56.1**

        The Court's account of the facts is based on the record evidence.[1]  These facts are

properly treated here as undisputed, because Ogbon, who is represented by counsel, failed to

comply with Local Rule 56.1.  Under that rule, the moving party must submit a statement of "the

---

[1] This includes the Declaration of Angela Hamm in Support of Defendants' Joint Motion for
Summary Judgment ("Hamm Decl.") (Dkt. 144) and the exhibits attached thereto, including the
Deposition of Florence Ogbon (Hamm Decl. Ex. 1) ("Ogbon Dep."), the Affidavit of Steven
Reger and the exhibits attached thereto (Hamm Decl. Ex. 2) ("Reger Decl."), and the Declaration
of Jason Scott and the exhibits attached thereto (Hamm Decl. Ex. 3) ("Scott Decl."); and the
Declaration of Florence Ogbon ("Ogbon Decl.") (Dkt. 162) and the exhibits attached thereto.

material facts as to which the moving party contends there is no genuine issue to be tried."
S.D.N.Y. Local Rule 56.1(a).  Defendants complied with this obligation, identifying admissible
evidence sufficient to support each asserted fact.  *See* Dkt. 140 ("Def. 56.1").  In response, the
non-moving party, here, Ogbon, must submit a responsive statement, which includes "a
correspondingly numbered paragraph responding to each numbered paragraph in the statement of
the moving party."  S.D.N.Y. Local Rule 56.1(b).  Notably, "[e]ach numbered paragraph in the
statement of material facts set forth in the statement required to be served by the moving party
will be deemed to be admitted for purposes of the motion unless specifically controverted by a
correspondingly numbered paragraph in the statement required to be served by the opposing
party."  S.D.N.Y. Local Rule 56.1(c).  Additionally, "[e]ach statement by the movant or
opponent . . . controverting any statement of material fact[] must be followed by citation to
evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  S.D.N.Y.
Local Rule 56.1(d).

Ogbon's Local Rule 56.1 statement completely fails to comply with these requirements:
Its numbered paragraphs do not correspond to defendants' statement and are utterly unresponsive
to that statement; it lacks citation to a single piece of documentary evidence; and it consists of
conclusory statements unsupported by any record evidence.  *See* Dkt. 61 ("Pl. 56.1").  Ogbon's
failure is particularly egregious in light of the fact that the Court pointedly drew the requirements
of Local Rule 56.1 to Ogbon's counsel's attention at the conference held immediately prior to the
filing of this motion:

> Let me just state to all of you [that] there is a distinct procedure in the local rules
> here consistent with my individual practices with regard to 56.1 statements.  Mr.
> Okocha, with respect, I am looking at you in particular because there have been
> issues with regard to noncompliance with the Court's rules, and I don't want you
> to inadvertently hurt your client by not complying here.  [A] party is required to
> submit a compliant 56.1 statement and submit an opposition to the other side's

56.1 statements.   A common issue that I have seen in many cases involves the moving party making an appropriate statement in a 56.1 about a factual proposition backed up by evidence and then the other party in its opposition simply denying it without any factual reference point.   The case law is crystal clear that that is insufficient, that a general unsubstantiated denial functions as an admission of the fact that it is responsive to.

Dkt. 167 (Transcript of January 4, 2013 Pre-Motion Conference ("Tr.")).

As the Court emphasized to Ogbon's counsel at the pre-motion conference, Ogbon's failure to comply with the requirements of Local Rule 56.1 "permits the [C]ourt to conclude that the facts asserted in [defendants'] statement are uncontested and admissible." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (citing *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998)).   "In the typical case, failure to respond results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met." *Id.* (citing *Millus v. D'Angelo*, 224 F.3d 137, 138 (2d Cir. 2000)).

With that prelude, the Court proceeds to recite the undisputed facts of the case.

## B.  Factual Background

### 1.    The Theft of Ogbon's Identity

Ogbon is a native of Nigeria, who attended college in the United States from 1978 to 1984.  Ogbon Dep. 25, 224–25.[2]  In 1978, Ogbon was issued a Social Security Number.  *Id.* at

---

[2] In her opposition brief, Ogbon argues that her own deposition testimony is inadmissible on this motion, because (1) defendants included only portions of the transcript of her deposition in the summary judgment record, and (2) Ogbon has not authenticated the transcript as reflecting her true testimony.  These arguments are frivolous.  First, defendants properly excerpted only those portions of the deposition transcript relevant to this motion; to the extent Ogbon believes that some other portion was relevant, she was at liberty to supplement the record in her opposition papers.  Second, "[t]he fact that Plaintiff did not sign the deposition transcript does not . . . make it inadmissible, as a deponent is required to sign the deposition transcript only if review of the transcript is requested before the deposition is completed and changes are made by the deponent."  *Dore v. Wormley*, 690 F. Supp. 2d 176, 178 n.2 (S.D.N.Y. 2010) (quoting *Merring v. Town of Tuxedo, N.Y.*, No. 07 Civ. 10381 (CS), 2009 WL 849752, at *1 n.7 (S.D.N.Y. Mar. 31, 2009)).  Ogbon does not claim to have made such a request.  Her deposition is admissible.

14, 234.  In 1984, after receiving a degree from Southern University, Ogbon returned to Nigeria. *Id.* at 24–27.  She remained in Nigeria until June 2007, when she returned to the United States. *Id.* at 24.

Upon returning to the United States in 2007, Ogbon learned that her identity had been stolen.  *Id.* at 45.  On May 28, 2008, she filed a complaint with the local police in Minnesota, where she was living at the time, claiming that an unknown person had been using her name and Social Security Number for 10 years to obtain tax refunds, open credit and bank accounts, and file for bankruptcy twice.  *Id.* at 23–24, 45–48; *id.* Ex. 3.  In February 2009, Ogbon, then living in New York, filed another identity theft complaint, this time with local police in Georgia.  *Id.* at 52–54; *id.* Ex. 5.  Ogbon alleged that Veronica Ilenre, a former friend and neighbor from Ogbon's previous stay in the United States, *see id.* at 54–55, 65, 237–38, had used Ogbon's name to incur debts, obtain a mortgage, file tax returns, and declare bankruptcy, *id.* at 38, 44–45, 76–77.

In May 2011, Ilenre was arrested in Georgia on several charges of identity theft.  *Id.* Ex. 9.  In 2012, Ilenre pled guilty in Georgia state court and was sentenced to a term of work release and probation.  *Id.* Ex. 11.  Ilenre was ordered to pay $50,000 in restitution to Ogbon, *id.*, an amount which Ogbon has been receiving in installments, *id.* at 74.

### 2.   Ogbon's Interactions with Trans Union

Trans Union is a "consumer reporting agency" as defined by the FCRA.  Reger Decl. ¶ 2. It regularly receives information from creditors ("Furnishers"), compiles that information to create consumer credit reports, and makes these reports available to clients who are engaged in credit-related transactions.  *Id.* ¶ 4.  Trans Union has credit files on approximately 210 million customers and collects information from more than 85,000 Furnishers, who report credit

information to Trans Union on a monthly basis. *Id.* ¶¶ 6–7, 9. Trans Union has an incentive to accurately report consumer information, and it contractually requires that Furnishers report only accurate information. *Id.* ¶¶ 10, 13–15. Trans Union is a member of the Consumer Data Industry Association (the "CDIA"), a trade association through which credit reporting agencies share consumer information. *Id.* ¶ 16.

On May 23, 2008, Ogbon contacted Equifax, another credit reporting agency, to request that an initial fraud alert be placed on her credit file. *Id.* ¶ 47. That same day, Equifax notified Trans Union through the CDIA Fraud Exchange of Ogbon's request. *Id.* ¶ 48. Trans Union responded by adding an initial fraud alert to Ogbon's credit file, suppressing her credit file from promotion, and notifying her by letter of this action and enclosing a Fraud Bill of Rights. *Id.* ¶ 49.

On February 3, 2009, Ogbon contacted Trans Union by telephone to notify Trans Union that she had been a victim of identity theft and to request a copy of her credit report. Ogbon Dep. 242; Reger Decl. ¶ 53; *id.* Ex. A. In response to Ogbon's inquiry, Trans Union added a fraud alert to her file, changed the name on her credit file to include her middle name, and deleted the telephone number and a previous address associated with her file. Reger Decl. ¶ 54; *id.* Ex. B. Trans Union also notified Ogbon that the mailing address she provided did not match the information in Trans Union's file, and, on February 3, 2009, sent Ogbon a letter requesting that she provide acceptable proof of her current address. *Id.* Ex. A; Ogbon Dep. 243–47. The letter specified the acceptable forms of proof of address and advised Ogbon of the proper procedure for contacting Trans Union to request that a valid identity theft report from a law enforcement agency—such as the 2008 Minnesota report or the 2009 Georgia report—be added to her file. Reger Decl. Ex. A. The next day, February 4, 2009, Ogbon contacted Trans Union

again, and was again advised that she needed to provide proof of her identification and address. *Id.* ¶ 55.

On February 10, 2009, Trans Union received correspondence from Ogbon enclosing a number of documents, including her Social Security Card, which constituted acceptable proof of her Social Security Number; however, the other documents did not provide acceptable proof of her address. Reger Decl. ¶¶ 56–57; *id.* Ex. C; Ogbon Dep. 247–56. Accordingly, on February 12, 2009, Trans Union sent Ogbon another letter setting forth four reasons why her submissions were deficient, and again explaining the acceptable forms of proof of address. Reger Decl. ¶ 58; *id.* Ex. D; Ogbon Dep. 258–59.

On March 2, 2009, Trans Union received additional documents from Ogbon, including her New York State learner's permit and a bill from ConEdison, addressed to her and her son-in-law. Reger Decl. ¶ 59, *id.* Ex. E; Ogbon Dep. 262–65. The learner's permit listed Ogbon's address as "10 Cleveland Pl. 3, Yonkers, N.Y. 10710"; the Con Edison bill omitted the apartment number, listing her address as "10 Cleveland Pl., Yonkers, N.Y. 10710," although it also mentions that service was delivered to "10 Cleveland Plac [sic] 3." Reger Decl. Ex. E. Because of this minor discrepancy in the apartment number (or lack thereof), Trans Union deemed Ogbon's submission insufficient proof of her address. *Id.* ¶ 59. When Ogbon called Trans Union on March 13, 2009, Trans Union once again notified her that her proof of address was deficient. *Id.* ¶ 60. On March 14, 2009, Trans Union received another notice from CDIA Fraud Exchange, and accordingly updated the fraud alert on Ogbon's file. *Id.* ¶ 61; *id.* Ex. F.

Trans Union had no further communication with Ogbon until Ogbon, represented by counsel, filed this lawsuit, on May 6, 2010. *Id.* ¶ 62. After Ogbon's counsel provided Trans Union with the 2008 Minnesota police report and the 2009 Georgia police report that Ogbon had

filed, Trans Union processed the reports pursuant to its standard procedures and removed all

disputed information from Ogbon's credit file. *Id.* ¶¶ 63–64. Trans Union's credit file for

Ogbon currently lists her accounts as satisfactory and includes an Extended Fraud Alert, which

will remain in her file until July 2018. *Id.* ¶ 65; *id.* Ex. G.

### 3.    Ogbon's Interactions with Experian

Like Trans Union, Experian is a consumer reporting agency as defined by the FCRA,

which regularly receives information from Furnishers and compiles that information to create

consumer credit reports. Scott Decl. ¶¶ 6–8. It also has files on more than 200 million

consumers and employs procedures to ensure the accuracy of these files. *Id.* ¶¶ 9–23.

On May 23, 2008, Experian was notified by another credit reporting agency that Ogbon

had contacted them regarding possible identity theft. *Id.* ¶ 25. The same day, Experian sent

Ogbon a letter notifying her that a security alert had been placed in her file, explaining how she

could request a copy of her credit report, and providing information about preventing identity

theft. *Id.* & Ex. A; Ogbon Dep. 84–86. Ogbon did not make any contact with Experian until

February 2, 2009,[3] when she called Experian to request a copy of her credit report and to add a

security alert to her report. Scott Decl. ¶ 27; Ogbon Dep. 304. The same day, Experian sent

Ogbon a letter again notifying her that a security alert had been placed in her file, and explaining

that she would have to provide sufficient proof of her identity, including her Social Security

Number, in order to obtain a free credit report or to dispute information in her file. Scott Decl. ¶

27; *id.* Ex. B.

---

[3] In her deposition, Ogbon equivocates as to whether she ever contacted Experian in 2008: "Q: When in 2008 did you [send a copy of your identity theft report to Experian]? A: I'm not sure of the dates specifically. I'm not sure of the dates. Let me not say. I don't want to tell lies, but I did. I'm not sure of the dates now. I can't give you the dates specifically." Ogbon Dep. 86–87. Ogbon has no record of any communications sent to Experian in 2008, *see id.* at 87, and Experian has no record of any such contact, *see* Scott Decl. ¶ 26.

On March 2, 2009, Experian received a package from Ogbon enclosing her New York State learner's permit and Con Edison bill.  Scott Decl. ¶ 28; *id.* Ex. C.  That package did not include proof of her Social Security Number, nor did it contain any information regarding Ogbon's desired relief.  *Id.* ¶ 28; *id.* Ex. C.  On March 6, 2009, Experian sent Ogbon a letter again asking her to provide sufficient identifying information, including her Social Security Number.  *Id.* ¶ 29.  On March 14, 2009, Ogbon called Experian to request a free copy of her credit report.  *Id.* ¶ 31.  Experian again informed her of the need to provide information confirming her identity, and on the same day sent her another letter to that effect.  *Id.*; *id.* Ex. D.  Ogbon did not respond.  *Id.* ¶ 32; Ogbon Dep. 305.

On September 12, 2009, Ogbon's counsel sent a letter to Experian styled as a "Validation Letter/Cease and Desist Letter/Dispute and Investigation and Re-investigation Letter and Intent to Sue Letter."  Scott Decl. Ex. E.  The letter states that "if any negative information is placed on my client's Credit Reports by your agency after receipt of this notice, this will cause us to file lawsuit against you and your organization/firm."  *Id.*  It also demands that "[i]f any negative report is already place [sic] in my client's credit file you should instruct that it be deleted immediately."  *Id.*  Although the letter lists Ogbon's name and address, it does not provide any other information confirming her identity, such as her Social Security Number, and the letter repeatedly refers to Ogbon using the pronoun "he."  *Id.*  Further, the bank account numbers referenced in the letter did not match those that appeared in Ogbon's credit file.  Scott Decl. ¶ 33.  Accordingly, on September 24, 2009, Experian replied by letter to Ogbon's counsel, informing him that Experian had been unable to determine what relief Ogbon was seeking, and notifying him that, under the FCRA, Experian could not furnish Ogbon's credit report without proper identifying information.  *Id.* ¶ 34; *id.* Ex. F (citing § 1681h of the FCRA).  Neither Ogbon nor

8

her counsel responded to this letter until the filing of this case.  *Id.* ¶¶ 35–36.  Once Ogbon's counsel provided Experian with Ogbon's identification information and information about the nature of the dispute, Experian removed all information from Ogbon's file that she claimed resulted from fraudulent activity.  *Id.* ¶ 37.

### C.  Procedural History

On May 6, 2010, Ogbon filed her original Complaint, naming Trans Union, Experian, Equifax Information Services, Inc. ("Equifax"), Beneficial Credit Services, Inc. ("Beneficial"), and Bank of America, N.A. as defendants.  Dkt. 1.  Four of these defendants—Beneficial had not been served—moved to dismiss the complaint for failure to state a claim.  Dkt. 10, 17.

On February 1, 2011, the Hon. George B. Daniels, who was previously assigned to the case, granted that motion, but granted Ogbon leave to file a motion to amend her complaint. Dkt. 34.  On March 1, 2011, Ogbon filed a motion to amend.  Dkt. 39.  Bank of America opposed that motion, Dkt. 43, and Judge Daniels denied as futile Ogbon's motion to amend as to Bank of America, Dkt. 61.  Trans Union, Experian, and Equifax did not oppose the motion to amend.  On October 11, 2011, Ogbon filed her Amended Complaint, bringing claims against Trans Union, Experian, Equifax, and Beneficial.  Dkt. 69.[4]

On November 28, 2011, Ogbon filed a Second Amended Complaint, bringing additional claims and naming eight additional defendants.  Dkt. 76.  On December 23, 2011, several defendants moved to dismiss the Second Amended Complaint.  Dkt. 79.  On January 13, 2012, Ogbon filed an untimely opposition.  Dkt. 90.[5]  On September 4, 2012, the Court granted defendants' motion to dismiss the Second Amended Complaint, finding that Ogbon had directly

---

[4] On October 6, 2011, the case was reassigned to this Court.  Dkt. 68.

[5] On February 7, 2012, Ogbon settled her claims against Beneficial.  Dkt. 101.

violated an Order given by Judge Daniels—at a September 13, 2011 status conference—
regarding the deadline for adding parties and claims.  *See* Dkt. 117, at 3.  Accordingly, the Court
dismissed the eight additional defendants from the case and restored the Amended Complaint as
the operative pleading.

In the ensuing discovery period, Ogbon's counsel was habitually delinquent in complying
with discovery obligations and court orders, requiring the Court's repeated intervention.  *See,
e.g.*, Dkt. 122, 128, 131; *see also* Dkt. 75.  On January 4, 2013, the Court held a pre-motion
conference.  At that conference, the Court raised several outstanding discovery disputes, but the
parties agreed that these issues would not materially affect the anticipated summary judgment
motion, and therefore could be addressed after the resolution of that motion.  Dkt. 136; *see* Tr. 7–
12, 17.  As noted, the Court gave the parties clear instructions at that conference regarding the
applicable rules governing summary judgment motions.  *Id.* at 16.

On February 1, 2013, Trans Union and Experian filed a joint motion for summary
judgment.  Dkt. 138–146.  On February 27, 2013, Ogbon voluntarily dismissed her claims
against Equifax.  Dkt. 149.  On March 11, 2013, Ogbon timely filed a memorandum of law in
opposition to defendants' motion, attaching a Local Rule 56.1 Statement and the Declaration of
Florence Ogbon.  Dkt. 152.  Ogbon's submissions were rejected by the Court's electronic filing
system, however.  On March 13, 2013, Ogbon attempted to correct the docketing error; in doing
so, however, Ogbon filed materially different papers than she had on March 11, 2013, which had
been the deadline for her opposition.  On March 15, 2013, defendants called this discrepancy to
the Court's attention by letter; the Court struck the untimely documents from the record and
directed Ogbon to refile her opposition papers in exactly the form they had been submitted on
March 11.  Dkt. 157.  On March 16, 2013, Ogbon did so.  Dkt. 158–60.  On March 18, 2013,

Ogbon requested leave to supplement her opposition papers with the additional items added on

March 13; the Court denied that request, finding that Ogbon's failure to timely file these

materials was not a product of good faith excusable neglect, but rather was consistent with a

pattern of disregard for Court orders and deadlines.  Dkt. 161.  On March 19, 2013, defendants

filed their reply papers.  Dkt. 163, 166.

## II.       Applicable Legal Standard

A court should grant summary judgment only when the submissions, taken together,

"show[] that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment

bears the burden of demonstrating the absence of a material factual question; in making this

determination, the court must view all facts "in the light most favorable" to the non-movant.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Holcomb v. Iona Coll.*, 521 F.3d

130, 132 (2d Cir. 2008).  To survive a motion for summary judgment, the opposing party must

establish a genuine issue of material fact by "citing to particular parts of materials in the record."

Fed. R. Civ. P. 56(c)(1).  "A party may not rely on mere speculation or conjecture as to the true

nature of the facts to overcome a motion for summary judgment," because "conclusory

allegations or denials cannot by themselves create a genuine issue of material fact where none

would otherwise exist."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law" will

preclude a grant of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).

### III.    Discussion

### A.  FCRA Claims

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007).  "The FCRA creates a private right of action against credit reporting agencies for the negligent or willful violation of any duty imposed under the statute."  *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 474 (2d Cir. 1995) (citing 15 U.S.C. §§ 1681o & 1681n); *see Okocha v. HSBC Bank USA, N.A.*, No. 08 Civ. 8650 (MHP), 2010 WL 5122614, at *5 (S.D.N.Y. Dec. 14, 2010).  Ogbon alleges that defendants violated several duties under the FCRA.  The Court addresses these claims in turn.

### 1.    The § 1681e(b) Claim

Ogbon's first claim is that defendants violated their duties under § 1681e, which provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b); *see Podell v. Citicorp Diners Club., Inc.*, 112 F.3d 98, 104 (2d Cir. 1997).

"To succeed on a claim under this section, a plaintiff must establish that: (1) the consumer reporting agency was negligent in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury."  *Gorman v. Experian Info. Solutions, Inc.*, No. 07 Civ. 1846 (RPP), 2008 WL 4934047, at *4 (S.D.N.Y. Nov. 19, 2008) (quoting *Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824, 829 (E.D.N.Y.

1994)); *see Houston v. TRW Info. Servs., Inc.*, No. 88 Civ. 186 (MEL), 1989 WL 59850, at *1 (S.D.N.Y. May 2, 1989), *aff'd* 896 F.2d 543 (2d Cir. 1990)).  Even if the information contained in the challenged credit report is inaccurate, "a credit reporting agency is not held strictly liable under the FCRA merely for reporting it; rather, the consumer must show that the agency failed to follow reasonable procedures in generating the inaccurate report."  *Whelan*, 862 F. Supp. at 829 (citing *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991); *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 51 (D.C. Cir. 1984)); *see Gorman*, 2008 WL 4934047, at *4.

 "The standard for evaluating the reasonableness of an agency's procedures is what a reasonably prudent person would do under the circumstances."  *Whelan*, 862 F. Supp. at 831 (citing *Houston v. TRW Info. Servs., Inc.*, 707 F. Supp. 689, 693 (S.D.N.Y. 1989) (additional citations omitted)).  "Whether or not the credit reporting agency followed reasonable procedures 'will be a jury question in the overwhelming majority of cases.'"  *Gorman*, 2008 WL 4934047, at *4 (citing *Cahlin*, 936 F.2d at 1156).  However, "[t]o defeat a motion for summary judgment on a § 1681e(b) claim, a plaintiff must minimally present *some* evidence from which a trier of fact can infer that the consumer reporting agency failed to follow reasonable procedures in preparing a credit report."  *Whelan*, 862 F. Supp. at 831 (citation omitted) (emphasis added).

 Summary judgment is merited in favor of both Trans Union and Experian here, because Ogbon has adduced no evidence to suggest that either defendant failed to follow reasonable procedures in preparing her credit report.  Ogbon argues only that, because there was an error, the procedures must have been unreasonable.  But the FCRA does not impose such strict liability.  *Whelan*, 862 F. Supp. at 829; *see Sarver v. Experian Info. Solutions*, 390 F.3d 969, 972 (7th Cir. 2004) ("[A] mistake does not render the procedures unreasonable.").

Both Trans Union and Experian have provided detailed explanations of the procedures they utilize to ensure the accuracy of their credit reports.  *See* Reger Decl. ¶¶ 4–46; Scott Decl. ¶¶ 11–23.  Unfortunately, Ogbon's identity was stolen by Ilenre, who opened accounts and incurred debts using Ogbon's name and Social Security Number.  But Ogbon has identified no basis on which a jury could find that the defendants had a basis to question the accuracy of the reports it had received from Furnishers that Ogbon herself had incurred the debts in question. *See* Reger Decl. ¶¶ 33–38 (stating that the Furnishers who provided information regarding Ogbon are reliable sources of information and have no systemic problems with their respective procedures); *see also Sarver*, 390 F.3d at 972 (The FCRA "does not hold a reporting agency responsible where an item of information, received from a source that it reasonably believes is reputable, turns out to be inaccurate unless the agency receives notice of systemic problems with its procedures.").  Under these circumstances, there is no genuine issue as to whether the defendants followed reasonable procedures.  *See Podell*, 112 F.3d at 105 (affirming grant of summary judgment for credit reporting agency, finding that agency did follow reasonable procedures, *even though* it continued to report plaintiff's indebtedness after being advised by his creditors that this was in error, because agency also received subsequent reports from those same creditors reaffirming the debts:  "[agency] was entitled to report [plaintiff's indebtedness], at least until it heard from him directly").  Summary judgment is therefore merited in favor of defendants on this claim.[6]

---

[6] Ogbon also brings a claim under the parallel provision of the NYFCRA, which provides: "Consumer reporting agencies shall maintain reasonable procedures designed to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  N.Y. Gen. Bus. Law § 380-j(e).  Because the language of this statute is substantially similar to the parallel federal provision, it must be construed the same way.  *Scott v. Real Estate Fin. Grp.*, 183 F.3d 97, 100 (2d Cir. 1999).  Accordingly, summary judgment is granted in defendants' favor on this claim.

### 2.    The § 1681i Claim

Ogbon's second claim is that defendants violated their duty to reinvestigate disputed

information.  The FCRA provides:

> [I]f the completeness or accuracy of any item of information contained in a
> consumer's file at a consumer reporting agency is disputed by the consumer and
> the consumer notifies the agency directly, or indirectly through a reseller, of such
> dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to
> determine whether the disputed information is inaccurate and record the current
> status of the disputed information, or delete the item from the file . . . .

15 U.S.C. § 1681i(a)(1)(A).  Notwithstanding this duty, "a consumer reporting agency may

terminate a reinvestigation of information disputed by a consumer . . . if the agency reasonably

determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a

failure by a consumer to provide sufficient information to investigate the disputed information."

§ 1681i(a)(3)(A).  "Prior to being notified by a consumer, a credit reporting agency generally has

no duty to reinvestigate credit information."  *Casella*, 56 F.3d at 474.  The operative question

here is whether Ogbon ever provided defendants with sufficient identifying information to

investigate the disputed credit information, thereby triggering defendants' duty to reinvestigate.

As to Experian, Ogbon clearly did not.  On May 23, 2008, having received notice from

another credit reporting agency of the possible theft of Ogbon's identity, Experian sent Ogbon a

letter detailing the identifying information it would need from her to send her a free copy of her

credit report.  Scott Decl. ¶ 25; *id.* Ex. A; Ogbon Dep. 84–86.  Experian sent similar letters to

Ogbon, in response to her inquiries, on February 2, 2009, March 6, 2009, and March 14, 2009.

Scott Decl. ¶¶ 27, 29, 31; *id.* Exs. B, D.  Although Ogbon contacted Experian by phone on

numerous occasions, the only identifying information she ever sent to Experian lacked proof of

her Social Security Number.  *Id.* ¶ 28; *id.* Ex. C.  Nor did the "Cease and Desist" letter sent by

Ogbon's counsel contain sufficient identifying information for Experian to investigate Ogbon's

claim.  *Id.* Ex. E.  When Experian responded to Ogbon's counsel requesting such information, it received no response.  *Id.* ¶¶ 35–36.  Because of Ogbon's failure to provide her Social Security Number (and to specify the precise nature of her dispute), it was entirely reasonable for Experian to decline to reinvestigate Ogbon's claim until it received such information.  *See Anderson v. Trans Union*, 405 F. Supp. 2d 977, 984 (W.D. Wis. 2005) ("Given [plaintiff's counsel's failure to provide an accurate Social Security Number] and defendant's duty under §§ 1681(b) and 1681e(b) to follow reasonable procedures to insure both the accuracy and confidentiality of plaintiff's credit information, defendant's prompt decision to confirm plaintiff's social security number was both reasonable and prudent.  If any unreasonable action was taken in this case, it was the failure of plaintiff's attorney to provide prompt confirmation of plaintiff's social security number.").  Summary judgment is therefore merited in Experian's favor.

Like Experian, Trans Union repeatedly notified Ogbon of the need to provide identifying information and the proper means by which to do so.  Reger Decl. ¶¶ 49, 55, 58, 60; *id.* Exs. A, D.  Ogbon's claim against Trans Union presents a slightly closer question, however, because Ogbon provided Trans Union with more identifying information:  On February 10, 2009, she sent Trans Union a copy of her Social Security Card, *see* Reger Decl. Ex. C, and on March 2, 2009, she sent Trans Union her New York State learner's permit and a bill from ConEdison, both of which bore her home address, *see id.* Ex. E.  Trans Union still found this proof of her identity insufficient, however, because of a minor discrepancy in the home address listed on these two documents—one included the apartment number, one did not.  *Id.* ¶ 59.

Although the Court can understand Ogbon's frustration with Trans Union's extreme attention to detail, it is mindful that Trans Union has a duty to protect the confidentiality and security of Ogbon's information.  *See* 15 U.S.C. § 1681(b) ("It is the purpose of [the FCRA] to

require that consumer reporting agencies adopt reasonable procedures . . . with regard to the

confidentiality . . . of [consumer] information."); *cf.* 15 U.S.C. § 1681h(a)(1) ("A consumer

reporting agency shall require, as a condition of making the disclosures required under section

1681g of this title, that the consumer furnish proper identification.").  And upon receiving

Ogbon's March 2, 2009 correspondence, Trans Union did not rebuff, unexplained, her efforts to

dispute the charges; rather, it notified her once again that her proof of address was deficient and

explained why.  Reger Decl. ¶ 60.  This was a readily correctable problem.  Moreover, Trans

Union was particularly justified in proceeding with an abundance of caution when trying to

confirm Ogbon's address (and thus identity), because her previous submission to Trans Union

had contained documents bearing three different home addresses.  *Id.* Ex. C; *see Singletary v.*

*Equifax Info. Servs., LLC*, No. 2:09-CV-0489-SLB, 2012 WL 4329273, at *9 (N.D. Ala. Sept.

18, 2012) (credit reporting agency's policy of insisting on exact matching of consumer's full

address does not require more than the minimal personal information necessary to properly

identify the consumer (citing 12 C.F.R. § 1022.123 (regulation setting forth appropriate proof of

identity))); *Anderson*, 405 F. Supp. 2d at 984 (given defendant's duty "to follow reasonable

procedures to insure both the accuracy and confidentiality of plaintiff's credit information,

defendant's prompt decision to confirm plaintiff's social security number was both reasonable

and prudent").  Finally, even assuming that Ogbon had sufficiently proven her identity, Trans

Union had very little data to work with, because Ogbon's correspondence never provided

concrete information as to which charges she sought to dispute.  *See Petty v. Equifax Info. Servs.,*

*LLC*, No. CCB-10-694, 2010 WL 4183542, at *3 (D. Md. Oct. 25, 2010) ("The [FCRA] requires

that a consumer notify a [credit reporting agency] of the existence and nature of a dispute for an

obvious reason:  Without notice of a consumer's dispute, including an explanation of why a

consumer believes his or her report is inaccurate or incomplete, a CRA generally would not know what information to reinvestigate, how to reinvestigate it, or whether upon reinvestigation the information is indeed inaccurate or incomplete.").  For these reasons, summary judgment is also merited in Trans Union's favor.[7]

### 3.    The § 1681g Claim

Ogbon' s Amended Complaint briefly references § 1681g, which requires credit reporting agencies to "clearly and accurately disclose" to consumers "[a]ll information in the consumer's file at the time of the request."  15 U.S.C. § 1681g(a).  However, a condition precedent to the consumer reporting agency's making such a disclosure is that "the consumer furnish proper identification."  § 1681h(a)(1).  As noted in Part III(A)(2), *supra*, Ogbon failed to do so.  Summary judgment is therefore merited in defendants' favor.[8]

### 4.    The § 1681b(a) Claim

The Amended Complaint also makes passing reference to § 1681b(a), which specifies the only circumstances under which a consumer reporting agency may furnish a consumer's credit report.  15 U.S.C. § 1681b(a); *see also* § 1681e(a) (requiring that consumer reporting agencies "maintain reasonable procedures designed . . . to limit the furnishing of consumer reports" to the

---

[7] Ogbon also brings a claim under the parallel provision of the NYFCRA, which provides:  "If a consumer disputes any item of information contained in his file, and such dispute is directly conveyed to the consumer reporting agency by the consumer, the consumer reporting agency shall promptly re-investigate and record the current status of such information, unless it has reasonable grounds to believe that the dispute by the consumer is frivolous."  N.Y. Gen. Bus. Law § 380-f(a).  Once again, the Court construes this statute in the same way as its similar federal analogue, and therefore grants summary judgment in defendants' favor on this claim. *Scott*, 183 F.3d at 100.

[8] Ogbon does not resist this conclusion:  She does not address this claim in her brief.  It is therefore waived.  *See Global Cross Estate Rep. v. Winnick*, No. 04 Civ. 2258 (GEL), 2006 WL 2212776, at *23 (S.D.N.Y. Aug. 3, 2006); *First Capital Asset Mgmt. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 392–93 (S.D.N.Y. 2002).

permissible purposes listed in § 1681b, and outlining what these procedures must entail).  "To prove a violation of section 1681b, a plaintiff must show that credit information was obtained for an impermissible purpose."  *Stonehart v. Rosenthal*, No. 01 Civ. 651 (SAS), 2001 WL 910771, at *3 (S.D.N.Y. Aug. 13, 2001); *see Perl v. Am. Express*, 12 Civ. 4380 (ER), 2012 WL 2711270, at *2 (S.D.N.Y. July 9, 2012).  Ogbon has failed to adduce any evidence that any entity obtained her credit information for an impermissible purpose.  Indeed, she does not even address this claim in her opposition brief.  Summary judgment is therefore merited in defendants' favor.[9]

### B.  State Common Law Claims

Ogbon also asserts common law claims of defamation and intentional infliction of emotional distress.

#### 1.    Defamation

The FCRA provides that:

> [N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency . . . based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e).[10]  Thus, defendants have "qualified immunity against defamation actions," which can only be overcome where plaintiff shows that defendants acted with malice or willful

---

[9] Defendants also argue that, even assuming Ogbon could establish liability on one or more of these claims, summary judgment is still merited because Ogbon has not adduced sufficient evidence of damages, is not entitled to punitive damages, and is not entitled to declaratory relief. *See* Def. Br. 17–21.  Having found no triable issue of fact as to defendants' liability on Ogbon's FCRA and NYFCRA claims, the Court need not reach this argument.

[10] Because defendants are "consumer reporting agencies," not "persons who furnish information to consumer reporting agencies," the broader preemption provision of 15 U.S.C. § 1681t(b)(1)(F)

intent.  *Houston*, 707 F. Supp. at 695; *see Whelan*, 862 F. Supp. at 833–34; *see also Holmes v. Experian Info. Solutions, Inc.*, No. 11-4705-cv, 2013 WL 48692, at *2 (2d Cir. Jan. 4, 2013) (summary order) (holding that "FCRA preempts claims of negligence by consumer reporting agencies, allowing recovery only for malice or willfulness"); *Ross v. F.D.I.C.*, 625 F.3d 808, 814 (4th Cir. 2010) ("Congress intended this section's general bar on defamation . . . actions to be quid pro quo for providing full disclosure under the FCRA.  The only exception to this bar is a narrow one, requiring proof of 'malice or willful intent to injure [the] consumer.'" (citations omitted) (alteration in original)).

The FCRA does not define "malice," and circuit courts are split as to whether state or federal law governs the meaning of malice under § 1681h(e).  *See Ross*, 625 F.3d at 815 (collecting cases).  The Second Circuit has not weighed in, but several district courts in this circuit have applied federal law and defined malice by reference to the standard set forth in *N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964).  *See, e.g.*, *Adams v. Nat'l Eng'g Serv. Corp.*, 620 F. Supp. 2d 319, 335 (D. Conn. 2009); *Cadet v. Equifax Credit Servs.*, No. 05-CV-4843, at *5 (E.D.N.Y. Jan. 18, 2008); *Frost v. Experian*, No. 98 Civ. 2106 (JGK)(JCP), 1999 WL 287373, at *6 (S.D.N.Y. May 6, 1999).  Under that standard, the question is whether the statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times Co.*, 376 U.S. at 280.  Measured by any standard, however, Ogbon's claim fails, because she has failed to adduce any evidence that defendants made false statements with malice or willful intent to injure her.  As noted, defendants received information from Furnishers, whom defendants reasonably believed to be reliable sources, that Ogbon had incurred various debts. Defendants had no reason to doubt the accuracy of this information and Ogbon failed to provide

---

does not apply.  *See Okocha v. HSBC Bank USA, N.A.*, 700 F. Supp. 2d 369, 374–75 (S.D.N.Y. 2010).

defendants with sufficient information to confirm her identity and identify the nature of her dispute.  Summary judgment is therefore merited in defendants' favor.

### 2.    Negligent and Intentional Infliction of Emotional Distress

Defendants argue that Ogbon's claims for negligent and intentional infliction of emotional distress are preempted.  Def. Br. 21–23.  Although the FCRA preempts state law claims "*in the nature of* defamation, invasion of privacy, or negligence" absent a showing of malice or willfulness, it does not explicitly mention of common law claims of negligent or intentional infliction of emotional distress.  15 U.S.C. § 1681h(e) (emphasis added).  At least one district court in this circuit has therefore held that defendants are not entitled to qualified immunity from such claims.  *See Adams*, 620 F. Supp. 2d at 335; *see also Davis v. Md. Bank*, No. 00-04191, 2002 WL 32713429, at *14 (N.D. Cal. June 19, 2002) (intentional infliction of emotional distress claim not preempted by § 1681h(e)).  The Court need not reach the preemption question, however, because Ogbon's claims are plainly deficient on the merits.

A claim of intentional infliction of emotion distress requires a showing of "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress."  *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993).  Ogbon has not adduced any evidence that either defendant engaged in any extreme or outrageous conduct.  As discussed, defendants acted reasonably in compiling credit information that they received from reliable Furnishers and refusing to reinvestigate Ogbon's claims until she provided sufficient information to verify her identity and inform defendants of the nature of her dispute.  Moreover, Ogbon has adduced no evidence that either defendant acted with intent to cause her distress.

Ogbon's negligent infliction of emotional distress claim is similarly unavailing.  Such a claim may be established by either a "bystander theory"[11] or the "direct duty theory."[12]  *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 2006).  Ogbon has adduced no evidence showing that any emotional distress she suffered stemmed from "either (1) physical injury or the threat of physical injury, or (2) breach of a special duty between [Ogbon] and defendant[s]."  *Okocha*, 700 F. Supp. 2d at 376.  Accordingly, summary judgment is merited in defendants' favor on both of these claims.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted.  The Clerk of Court is directed to terminate the motion pending at docket number 138, and to close this case.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: April 8, 2013
New York, New York

---

[11]  Under the bystander theory, "[a] plaintiff may recover for a purely emotional injury . . . when: (1) she is threatened with physical harm as a result of defendant's negligence; and (2) consequently she suffers emotional injury from witnessing the death or serious bodily injury of a member of her immediate family." *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 2006) (citing *Bovsun v. Sanperi*, 61 N.Y.2d 219, 230–31 (1984)).

[12]  "Under the 'direct duty' theory a plaintiff has a cause of action for negligent infliction of emotional distress if she suffers an emotional injury from defendant's breach of a duty which unreasonably endangered her own physical safety." *Mortise*, 102 F.3d at 696 (citing *Kennedy v. McKesson Co.*, 58 N.Y.2d 500, 504 (1983)).